**In the Matter of the WELFARE OF J.T.L.**

**No. Cl–87–1035.**

Court of Appeals of Minnesota.

Nov. 3, 1987.

Review Denied Jan. 20, 1988.

Ann M. Tanke, St. Paul, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., Robert W. Gyurci, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This is an appeal from an order denying appellant's motion to vacate an order entered 15 years ago that terminated her parental rights to her son, J.T.L. The trial court found that the motion was not timely. We affirm.

## FACTS

On February 26, 1972, appellant, who was 20 years old and unmarried, gave birth to J.T.L. On April 11, 1972, appellant signed an affidavit of consent for J.T.L. to be committed to the guardianship and legal custody of the Commissioner of Public Welfare or any other licensed child-placing agency in Minnesota. Appellant also consented to the adoption of J.T.L. and waived notice of the adoption proceedings. On that same day, appellant's parental rights were terminated by court order. Now, 15 years later, appellant seeks to have the order terminating her parental rights vacated, claiming that her consent was not given voluntarily, but rather had been procured through fraud.

## ISSUE

Did the trial court err in determining that appellant's motion was untimely?

## ANALYSIS

Appellant's motion to vacate was brought pursuant to Rule 60.02 of the Minnesota Rules of Civil Procedure, which provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment * * *, order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons: * * * (3) *fraud* * * *, misrepresentation, or other misconduct of an adverse party; * * * The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Minn.R.Civ.P. 60.02 (emphasis added).

Appellant does not contend that the signature on the affidavit of consent is not hers, but rather that she believed she was signing a consent to temporary foster care, not to termination of her parental rights and adoption of her child. Given the clear language contained in the consent form, the trial court found appellant should have understood the nature of her act.

Even if appellant's consent was procured by fraud, her motion to vacate was not brought within one year and, therefore, is untimely under Rule 60.02 *unless* there was fraud on the court.

In a proper case, a finding of fraud on the court would justify vacating an order terminating parental rights. Rule 60.02 provides:

> This rule does not limit the power of a court to * * * set aside a judgment *for fraud upon the court.*

Minn.R.Civ.P. 60.02 (emphasis added). Fraud on the court exists:

> Where a court is misled as to material circumstances, or ·its process is abused,

resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair * * *.

*Matter of Welfare of C.R.B.*, 384 N.W.2d 576, 579 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986) (quoting *Halloran v. Blue & White Liberty Cab Co.*, 253 Minn. 436, 442, 92 N.W.2d 794, 798 (1958)). A judgment may be set aside at any time if it is later discovered that there was fraud on the court. *Halloran*, 253 Minn. at 442, 92 N.W.2d at 798.

In this case, appellant's affidavit is not supported by the record and thus is insufficient to justify a finding of fraud on the court. In addition, this is not a proper case in which to vacate the termination order because, unlike *C.R.B.*, there has been an adoption which cannot be lightly disregarded.

J.T.L. was placed in an adoptive home in April 1972, and the adoption was made final in January 1973. He has lived with his adoptive parents for 15 years and has come to know them as his own. It would be disruptive to J.T.L. and would adversely affect the interests of his adoptive parents to reinstate appellant's parental rights. Absent a compelling record, which is not present here, denial of the motion to vacate the termination order is in J.T.L.'s best interests. The greater interest of society after this long period of time dictates that we sustain the lower court, and the intervening adoption compels this result.

## DECISION

Affirmed.

CRIPPEN, Judge, dissenting.

Appellant proposes to have contact with her son. There is ample reason to speculate, 15 years after an adoption, that she should not succeed in her effort to vacate a termination decision, and that the child's interests might preclude granting her any relief. It is inappropriate, however, to deny the motion without examining determinative facts of the case. Although appellant's motion is unique, she is entitled to have it considered judiciously.

Appellant's motion is founded on a clear and complete statement of fraud on the court. Her statement refutes a claim of laches. No part of the statement is contradicted by 1972 court records. Nothing said in the statement has been refuted or even investigated. Nothing was done to identify any facts regarding the circumstances of the child since January 1973.

This opinion ends with an observation on the welfare of the child born to appellant in 1972. The prospective interests of the child require that we recognize, as did the trial court, that appellant seeks to have contact with the child, nothing more. That characterization of the case should not be overlooked as we review the trial court's decision.

1. The trial court record confirms appellant's statement that she did not have counsel in the course of 1972 termination proceedings. She says that she was 19 years old and unemployed when the case was handled and that she permitted a short-term foster care arrangement because of her financial needs at the time. In spite of these circumstances, the record confirms that counsel was not appointed for her. She was entitled as a matter of law to counsel, and if she desired counsel, but could not afford it, the court was required to appoint counsel for her. Minn.Stat. § 260.155, subd. 2 (1971). The record includes no showing that appellant waived counsel in the case. Further, because she was a minor at the time, consent for waiver of counsel was required from her guardian ad litem, and there is no record of any such act of the guardian. Neither a finding, nor an inquiry has been made to learn whether appellant was denied her right to counsel in the case.

2. The record confirms that the trial court in 1972 appointed one person to serve both as guardian ad litem for appellant and for her child. Thus, any attempt to describe the 1972 proceedings has to consider a likely conflict of interest of the person designated to speak for appellant in the case.

3. Actions of appellant's guardian ad litem were an indispensable part of the 1972 proceedings. The law required that appellant's interests be protected by a guardian. Minn.Stat. § 260.155, subd. 4(a) (1971). Appellant states that she never met the person who was appointed to be her guardian ad litem in 1972. She contends this individual was not present in the judge's chambers at the time she was brought in to see the judge about the case. Neither a finding nor an inquiry has been made about these statements.

4. Appellant's sworn statement shows a fraud on the court in 1972. The court action was in the form of a finding that appellant consented to termination and that this was for good cause because she "cannot provide a home for the child and is unable to assume responsibility for the child's care." The consent document is short and to the point, and it includes consent for adoption of the child. The social worker identified in appellant's statement signed an affidavit saying appellant was served with notice of the hearing on the day the hearing occurred (ten day notice is required under Minn.Stat. § 260.231, subd. 3 (1971)), and the termination consent document also includes a waiver of notice of the hearing. There are at least five facets to the fraud appellant describes:

a. She alleges a county social worker established a close relationship with her during her pregnancy, and that this worker falsely represented to her that the court hearing on April 11, 1972, was to deal with her agreement for a short-term foster care arrangement. She contends she was never informed during the proceeding that the case involved permanent custody and that the idea of adoption was never mentioned to her. She contends the consent form was signed when she was with the judge, that she was given a pen and shown where to sign. She alleges that she thought she agreed to a temporary foster home placement and that she did not read the form she signed at the hearing. Appellant details her plans during and after the pregnancy to keep custody of the child, including her efforts to make and buy clothing and other child care items.

b. In her affidavit, appellant says that she never considered short-term foster care until it was suggested by the county social worker. She says the worker thought it would be good to have the child in foster care while appellant looked for a job. In addition, appellant says the social worker told her that it would not be right for appellant to live on public assistance; she says she began to feel guilty about receiving any AFDC.

c. Appellant says the social worker assured her the child would only be in foster care for one month, and that this assurance was repeated on the day the child was taken (about March 25, 1972), and on the preceding day. When once expressing her fear she would lose the child, she says the social worker said that nothing like that would happen. She contends that on the day of the visit to the judge, the social worker told her she would be getting her son back very soon because immediately after the placement she got a job as a nurse's aid at a nursing home.

d. In her statement, appellant says that the social worker was to pick her up to take her to see her son on April 8, 1971, but that the social worker did not come as scheduled. She says the social worker came on the morning of April 11 and told her they would have to go to a court hearing and then would go to the foster home for the visit. During the wait to see the judge, she says that the social worker told her the hearing would only take a minute and that the worker understood appellant was eager to visit her son.

e. After the hearing, appellant says the worker told her she would not take her for a visit that day, but that appellant should not worry because she would see her son soon. According to appellant, when she next talked to the social worker she was told she would never see her son again and that appellant had agreed to an adoption.

None of the appellant's statements have been investigated. If the statement includes false information, that should be relatively easy to establish. Inquiry on the statement did not even advance to the point

of questioning appellant about her description of facts. The trial court observed that appellant should have understood the consent document, but the court made no particular findings on the subjects appellant addressed in her statement. Absent some investigation and fact finding, it is arbitrary to disregard her statement.

5. The trial court concluded that appellant's motion failed because of the doctrine of laches. The court noted that the doctrine covered cases where a complainant lacked diligence in asserting a claim. This conclusion was stated in spite of appellant's description of facts showing her diligence and her frustration in challenging the termination. Appellant was not questioned on her statement, the facts she alleged were not investigated, and the court made no finding on the factual claims.

Appellant claims she made continual contacts with the court through the years since 1972, but that staff refused to give her information on the file and refused to permit her to talk with the judge who acted in 1972 or any other judge, always telling her that the case was closed. She says she got an attorney to help her and that the attorney was also refused access to the record because it was sealed. She says other lawyers told her they could not help unless she could have records of what happened. Finally, in November 1986, she says a trial judge reviewed the file and allowed her access to the court records. On their face, absent some inquiry and fact finding on these matters, the statement precludes a conclusion that appellant is barred from proceeding due to laches.

6. The trial court observed that the law denies a natural parent the right to reconsider her consent for termination after the proceedings are closed. Although this is a correct statement of the law, it does not dispose of this case. Appellant does not present a case of reconsideration. Instead, she asserts a longstanding effort to present a claim of fraud. Disposition of the case cannot occur without inquiry and findings on the claim.

7. Finally, the trial court concluded that relief for appellant would conflict with the child's best interests. The court found that the child was adopted on January 4, 1973. Although the record contains no other information regarding the child's welfare, the court observed in a memorandum that "within the last fifteen years [the child] has come to know his adoptive parents as his own and has his home with them."

Indeed, the best interest of the child would be a primary factor to consider in this case. Without some inquiry and fact finding, however, it is wholly speculative to suggest how the child's interests relate to appellant's suggestion for having contact with the child. The whereabouts of the child have not been identified. No inquiry has been made to learn whether or not the child's parents would favor appellant's contact with the child. Nothing whatsoever in the record permits us to speculate that this is not one of an increasing number of cases where the child would benefit by contact with a birth parent.

This trial court's denial of appellant's motion should be reversed and the case remanded for further proceedings, taking into account the need stated here for some inquiry and determination on the facts of the case.

I respectfully dissent.