**In the Matter of the WELFARE OF C.R.B. also known as C.R.B., Child.**

**No. C5–85–1616.**

Court of Appeals of Minnesota.

April 8, 1986.
Review Denied May 29, 1986.

 

Paul C. Engh, Minneapolis, for appellant Father.

Leslie M. Metzen, South St. Paul, for C.R.B.

Patrice K. Sutherland, Inver Grove Heights, Guardian Ad Litem, for Child.

Robert H. Peahl, Faribault, for respondent Mother.

Robert Carolan, Dakota Co. Atty., Mark J. Ponsolle, Asst. Dakota Co. Atty., Hastings, for Dakota County.

Heard, considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Carlton Brastad appeals from a trial court order vacating an order terminating Kim Wood's parental rights to their daughter, C.R.B. Brastad contends that Wood's motion to vacate the termination order was not timely under Minn.R.Civ.P. 60.02, that the trial court's finding of fraud was clearly erroneous and that reinstating Wood's parental rights is not in the best interests of C.R.B. We affirm.

## FACTS

Brastad and Wood were divorced in December 1980. The dissolution decree contained no reference to a child of the marriage. C.R.B. lived with Wood after the dissolution.

Several months later Wood began to have discipline problems with C.R.B. and eventually Brastad took C.R.B. to live with him with Wood's consent. On July 22, 1981, Brastad filed a petition to terminate Wood's parental rights to C.R.B. Brastad testified that he wanted to create a stable environment for C.R.B. and believed that without a formal adjudication Wood would continue to come and go, taking C.R.B. with her. Also, Brastad's name was not listed on C.R.B.'s birth certificate because he and Wood were not married at the time the child was born. (They married in 1977,

divorced early in 1978, and remarried shortly after C.R.B.'s birth on June 22, 1978). Brastad thought that in order to have C.R.B.'s name changed to his own he would need to formally adopt her and therefore Wood would have to terminate her parental rights.

Wood testified that she believed in 1981 that it was better for Brastad to have C.R.B. because Wood was not in a good emotional state. She also testified, however, that Brastad told her he would take C.R.B. and move out of state if she did not terminate her parental rights.

Against this background, Wood gave her consent to entry of an order terminating her parental rights. She did not have legal representation in this matter. The consent papers were drawn up by Brastad's attorney and Wood went to his office to sign them. The attorney testified that Wood was informed that the proceeding would be final.

On August 21, 1981, the trial court held a hearing on Brastad's termination petition. Wood did not appear at this hearing. At the hearing the trial court specifically asked Brastad if Wood had consented to the termination of her parental rights. Brastad answered yes. The trial court also asked if Wood had contacted Brastad about placing C.R.B. with him and whether he coerced Wood or tried to talk her into terminating her parental rights. Brastad testified that he had not coerced or influenced Wood.

The trial court expressed its concern over granting a termination of parental rights under these circumstances. Brastad and his attorney once again, however, emphasized Wood's consent to the termination. The trial court eventually agreed to grant the termination but expressed its reservations about the matter as follows:

THE COURT: * * * [A] termination doesn't make any sense.

COUNSEL: I think the statute, Your Honor calls for one of the provisions for termination is simply the written consent of the other parent.

THE COURT: Well but that doesn't mean that the termination has to be granted. I'll grant this termination but I don't like the idea, because you're taking away some of the child's rights, for no good reason. * * * So we don't like to terminate unless there's going to be an adoption.

After Wood's parental rights were terminated, she continued to have contact with C.R.B. During periods in 1982 and 1983, Wood lived with Brastad and C.R.B. At other times she continued to visit with C.R.B. at least once or twice a month.

In May 1983 C.R.B. was placed in foster care pursuant to a dependency and neglect proceeding that had been brought against Brastad. When county authorities discovered that Wood's parental rights to C.R.B. had been terminated, they informed Wood that she had no right to visit her daughter or to be apprised of what was happening to her.

Finally, on December 6, 1984, after pursuing such courses of action as contacting legal authorities and the Governor and Senators from Minnesota, Wood filed a motion to vacate the order terminating her parental rights. An evidentiary hearing on the motion was held on May 17, 1985, before the same trial judge that had ordered the original termination of Wood's parental rights. Wood testified that in the 1981 action she thought she was waiving her right to have C.R.B. live solely with her and to make major decisions about C.R.B.'s life, but she did not know she was waiving all rights to be informed of C.R.B.'s welfare. She believed that the termination procedure was the only way that she could place C.R.B. in Brastad's care and yet retain visitation rights. Also, at the May 1985 hearing Brastad himself testified that he told Wood she could see C.R.B. after the termination of her parental rights.

On July 31, 1985, the trial court vacated the order terminating Wood's parental rights. The trial court found that the original order terminating Wood's parental rights was the result of fraud, misrepresentation and was in fact a fraud upon the

court. Brastad appealed. On appeal, C.R. B.'s guardian ad litem joins Wood in seeking affirmance of the trial court.

## ISSUES

1. Is Wood's motion to vacate the termination order barred by the time limitation in Minn.R.Civ.P. 60.02?

2. Was the trial court's finding of fraud on the court clearly erroneous?

## ANALYSIS

### I. TIMELINESS OF MOTION TO VACATE

Brastad argues that Wood's delay in bringing the motion to vacate should have precluded the court from considering it. He claims that the motion is one brought pursuant to Minn.R.Civ.P. 60.02(3) and as such must be brought within one year.

Minnesota Rule of Civil Procedure 60.02 provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment * * *, order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons: * * * (3) fraud * * *, misrepresentation, or other misconduct of an adverse party[.] * * * The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

If rule 60.02(3) were the sole basis for vacating the termination order, the motion would have been untimely under this rule. ■ The trial court, however, specifically found that there was fraud on the court. Rule 60.02 specially provides that:

> This rule does not limit the power of a court to * * * set aside a judgment for fraud upon the court.

Further, in *Halloran v. Blue & White Liberty Cab Co.*, 253 Minn. 436, 442, 92 N.W.2d 794, 798 (1958), the Minnesota Supreme Court noted that "[a] judgment may be set aside at any time for after-discover-

ed fraud upon the court." Because the trial court found there had been a fraud upon the court, the time limits of Minn.R. Civ.P. 60.02 were inapplicable to Wood's motion to vacate and the motion was timely.

### II. FRAUD ON THE COURT

Fraud on the court exists:

> Where a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair * * *.

*Halloran*, 253 Minn. at 442, 92 N.W.2d at 798. The trial court made the following pertinent findings:

2. * * * [T]he termination order was questioned at the time of the termination hearing by the court-appointed guardian for said child and by the Court and * * * the termination of parental rights to said child by the mother were reluctantly granted by the Court at the hearing in 1981.

3. [Wood] was not represented by counsel at said hearing, nor did she make any appearances, nor did she testify at the termination hearing. Further, [Wood] was misinformed and misled by [Brastad] * * * as to the effect the termination would have on the mother's rights and was in fact promised by the father that she could have continued contact with the child if she agreed to the termination.

4. After the termination of [Wood's] parental rights, the following things took place: (a) [Wood] was given visitation with the subject child (b) for some period of time after the termination, the child lived and was in the custody of [Wood] (c) for a period of time after the termination, [Wood] and [Brastad] lived together with said child (d) there was little, if any change in the relationship between the parents and the child.

5. [Wood] had been informed by [Brastad] and other family members that [Brastad] would leave the state with [C.R.B.] and the mother would never see

[C.R.B.] again unless she signed and agreed to the termination. There have been no changes such as adoption, guardianship or any other matters adversely affecting third parties, the child, or changes that in any way affect the legal status of the parents and the child other than the original termination order herein. The Court therefore concludes there would be no disadvantage to the child and in fact it could prove to be advantageous, to vacate the original termination order. The Court further concludes that the termination order terminating the parental rights of [Wood] to the subject child was the result of fraud, misrepresentation and misconduct by [Brastad] and members of his family. Therefore, the petition for termination was not the free act and deed of [Wood] and was in fact a fraud upon the court and should be vacated.

The trial court's finding regarding Brastad's fraud and misrepresentations to the court will only be disturbed if it is clearly erroneous. *Thomas v. Thomas*, 356 N.W.2d 76, 80 (Minn.Ct.App.1984).

■ Brastad testified at the hearing on the termination petition that Wood had consented to terminate her parental rights and that he did not coerce her or try to talk her into the termination. The facts presented at the evidentiary hearing to vacate the termination order showed that Wood did not fully appreciate the effect of the termination proceedings, did not fully understand her other alternatives and was not represented by counsel. Wood's uninformed consent and the coercive nature of the circumstances surrounding her consent are certainly material circumstances that could have misled the trial court. Further, the relationship of the parties with one another and with C.R.B. in the months and years following termination of Wood's parental rights graphically indicates that no actual rupture of the mother/child relationship occurred. It is obvious that to the extent the parties gave any recognition to the court's 1981 order it was recognized as a custody determination only. In light of these facts we find the trial court did not clearly err in finding Brastad's misrepresentations worked a fraud upon the court.

## III. BEST INTERESTS OF THE CHILD

The trial court determined that vacation of the termination order "would be no disadvantage to the child and in fact * * * could prove to be advantageous." Brastad disagrees and argues that such vacation would not be in C.R.B.'s best interest.

■ We note initially that, ideally, any court determination that affects a minor child should consider and seek to serve the best interest of that child. However, we also recognize that in termination of parental rights matters, the best interest of a child cannot be solely determinative. *In re M.G. & J.G.*, 375 N.W.2d 588 (Minn.1985). We believe that policy must apply here as well where vacation of a termination order is under consideration.

Further, although we find no error in the trial court's characterization of the effects of its order upon C.R.B., we note that her best interest will be the subject of a future custody hearing. Vacation of the termination order was not tantamount to restoring C.R.B. to Wood's custody. In its July 31, 1985 order, the trial court scheduled a future hearing to review "the status of this child as a dependent child." All parties will have an opportunity at that time to express to the court their respective positions on C.R.B.'s custody.

■ Finally, it is our observation that vacation of the termination order did, in fact, serve the best interests of C.R.B. Certainly, termination of parental rights is a drastic measure that should only be undertaken with the utmost caution and, in all but the most rare instances, must be a final adjudication of the parties' rights. We believe this to be one of those rare instances. The circumstances here are unique. Following the 1981 termination order, this mother and child continued their relationship, a relationship which was ruptured only when C.R.B. was officially removed

from her father's custody and official recognition was given to the court order terminating Wood's parental rights. During most of C.R.B.'s short life she has resided in a family situation not unlike that of millions of other minor children whose natural parents occupy separate households but create and adhere to custodial and visitation arrangements. At no time was C.R.B. the subject of adoption proceedings by third parties. By vacating the termination order, the trial court has ensured for C.R.B. an opportunity to resume and continue the relationship with her natural mother that appellant himself assisted in fostering after the 1981 order.

## DECISION

Wood's motion to vacate the order terminating her parental rights was not barred by the time limits under Minn.R.Civ.P. 60.-02. The trial court did not err in finding that the termination of Wood's parental rights was the result of fraud upon the court. Vacating the termination order is in C.R.B.'s best interests.

Affirmed.