In the Matter of the WELFARE
OF T.D.

No. C4-00-2208.

Court of Appeals of Minnesota.

July 13, 2001.

Patrick D. McGee, Assistant Ramsey County Public Defender, St. Paul, MN, (for appellant).

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Kathryn Marie Eilers, Assistant County Attorney, St. Paul, MN, (for respondent).

Paul W. Bergstrom, St. Paul, MN, (for Guardian ad Litem).

Considered and decided by TOUSSAINT, Chief Judge, STONEBURNER, and LINDBERG, Judges.*

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

TOUSSAINT, Chief Judge

Appellant K.L.D.'s parental rights to T.D. were terminated by default. Appellant moved the district court to vacate the order arguing that: (1) the district court lacked personal jurisdiction over her due to insufficient service by publication; (2) procedural irregularities resulted in a denial of due-process rights; and (3) the district court improperly considered whether appellant had a meritorious defense in deciding appellant's motion to vacate the final order. Because the district court lacked personal jurisdiction over appellant due to deficient service by publication, we reverse.

## FACTS

Appellant is homeless and developmentally disabled. A concerned teacher first notified Ramsey County Community Human Services Department (RCCHSD) that appellant was five months pregnant. T.D., appellant's child, was born on April 3, 1999. Because appellant refused to sign a voluntary placement agreement, the police placed T .D. under a 72–hour hold.

On April 9, 1999, T.D. was returned to appellant on the condition that appellant participate in the Parent Child Development Institute's parenting and transitional housing program, where appellant would care for T.D. in a supervised setting at the home of her great aunt. In the following days, the great aunt expressed to RCCHSD her concerns about appellant's failure to care for T.D.

On April 16, 1999, appellant signed a voluntary placement agreement allowing T.D. to remain in the great aunt's care. Appellant agreed to participate in the Nekton Program, a specialized parenting program for developmentally disabled parents, and to visit T.D. twice per week. On May 24, 1999, appellant visited T.D. with her program worker at the great aunt's home for the first time since signing the voluntary placement agreement. Appellant has had no contact with T.D. or RCCHSD since that meeting.

In her October 2000 affidavit, the great aunt stated that appellant had contacted her several times. In June 1999, appellant told her great aunt that she did not want to work with her social worker, that she did not want RCCHSD to know where she was, and that she did not care if she ever got custody of T.D. again. The great aunt asserted that appellant also threatened to slash the throats of the child-protection worker and the intake worker. The great aunt stated that in July 1999, appellant called her to inquire about T.D.'s alleged father, but did not inquire about T.D.

In August 1999, RCCHSD filed a Child in Need of Protection or Services (CHIPS) petition. Because appellant's whereabouts were unknown, the court authorized service by publication. Appellant failed to appear at the hearing, and T.D. was adjudicated by default a child in need of protection or services. A case plan was submitted, but appellant did not participate in its development because her whereabouts remained unknown. Appellant failed to appear at a review hearing, where it was determined appellant had not contacted T.D. or inquired about her child's welfare for seven months.

The great aunt had no contact with appellant until February 2000, when the great aunt told an RCCHSD worker that appellant called asking her to meet appellant with T.D. so that she could run away with the baby. The great aunt asserted that during that conversation she gave appellant the name and phone number of her social worker.

In February 2000, RCCHSD filed a petition for termination of parental rights

(TPR). The district court ordered appellant to be served by publication. The publication notice stated the date, time, location, and purpose of the hearing, but it did not explain that a failure to appear could result in a default judgment. In her affidavit, the great aunt states that T.D.'s alleged father spoke with appellant over the phone and told her the date and time of the TPR hearing. Appellant failed to appear at the TPR hearing. The court waited three hours after the scheduled time and then summarily found appellant in default. No testimony was taken. In July 2000, the court filed a written order terminating appellant's parental rights to T.D. based on the record submitted with the TPR petition.

In October 2000, appellant filed a motion to vacate the final order because of mistake, fraud, void judgment, and any other reason justifying relief. Appellant argued that service by publication was insufficient and that she was denied due process because she was not represented by an attorney and a default judgment was entered at an initial hearing without any testimony. The district court denied appellant's motion, finding appellant had actual notice of the TPR hearing from the alleged father, that service by publication was properly made given that appellant's whereabouts were unknown, that there was no evidence that appellant received actual notice by publication, and that the prior juvenile rules did not require information about the consequences for non-appearance. The district court further found that appellant (1) presented no evidence that her whereabouts or address were known; (2) had no reasonable excuse for her failure to appear; (3) was not denied due process; and (4) did not show due diligence in seeking to have the TPR vacated. The district court also found that T.D. would be prejudiced if the order was vacated. Appellant challenges the district court's denial of her motion to vacate the final order.

## ISSUE

Was service of process by publication sufficient to give the district court personal jurisdiction over appellant?

## ANALYSIS

■ Appellant challenges the district court's denial of her motion to vacate the order terminating her parental rights to T.D. The Rules of Juvenile Procedure in effect at the time of appellant's motion to vacate the order did not have a provision comparable to Minn. R. Civ. P. 60.02. *See* Minn. R. Juv. P. 81.02 (2001) (delineating grounds for relief from juvenile-protection order applicable to matters filed after March 1, 2000). The parties agree that rule 60.02 generally applies to juvenile matters filed before March 1, 2000, such as this. *Cf. In re Welfare of B.J.J.*, 476 N.W.2d 525, 527–28 (Minn.App.1991) (applying rule 60.02 in considering whether to justify vacating order terminating parental rights). A reviewing court will uphold the district court's decision to grant or deny a rule 60.02 motion absent a clear abuse of discretion. *Id.* at 526–27.

■■ Appellant argues that the order is void because she was not properly served. A judgment is void if the district court lacked personal jurisdiction over the parties through a failure of service that has not been waived. *Bode v. Minnesota Dept. of Natural Res.*, 594 N.W.2d 257, 261 (Minn.App.1999), *aff'd*, 612 N.W.2d 862 (Minn.2000). A determination of whether service of process was proper is a question of law, which we review de novo. *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 866 (Minn.2000).

The district court may proceed with a hearing in a juvenile matter when an interested person is not present if that person

was provided appropriate notice of the proceeding. Minn. R. Juv. P. 42.02 (1999) (current version, effective March 1, 2000, at Minn. R. Juv. P. 63.02 (2001)). The rules require minimum initial service for parents in juvenile protection proceedings:

> The court, unless it finds that notice would be ineffectual and it would be in the interest of the child to proceed without notice, shall issue and cause notice to be served to the persons with the right to participate.

Minn. R. Juv. P. 44.02, subd. 3(B) (1999) (current version, effective March 1, 2000, at Minn. R. Juv. P. 69.02, subd. 2(a) (2001)). An interested party may be served personally or at their dwelling house or usual place of abode, or by mail. Minn. R. Juv. P. 44.02, subd. 6 (1999) (current version, effective March 1, 2000, at Minn. R. Juv. P. 69.02, subd. 3(a) (2001) (requiring summons shall be personally served unless the court orders service by publication)).

■ The county argues that the district court could exercise personal jurisdiction over appellant because notice would have been ineffectual where appellant's whereabouts were unknown and it was in the best interests of T.D. that the district court exercise personal jurisdiction. *See* Minn. R. Juv. P. 44.02, subd. 3(B) (1999). Even if notice by mail would have been ineffectual, the district court must obtain personal jurisdiction over all persons who had the right to attend through service of notice. *See* Minn. R. Juv. P. 42.02 (1999). Service by publication is sufficient to confer personal jurisdiction where "it is not reasonably possible or practicable to give more adequate warning." *Abu Dalbouh v. Abu–Dalbouh*, 547 N.W.2d 700, 703 (Minn. App.1996) (quoting *Gill v. Gill*, 277 Minn. 166, 171, 152 N.W.2d 309, 313 (1967)); *see also* Minn. R. Civ. P. 4.04(a); *Electro–Measure, Inc. v. Ewald Enter., Inc.*, 398

N.W.2d 85, 88 (Minn.App.1986) (emphasizing that publication must be "reasonably calculated" to reach the interested party), *review denied* (Minn. Mar. 13, 1987). Specifically in termination of parental rights cases, the rules require initial service by certified mail and publication for three weeks before the hearing. Minn. R. Juv. P. 44.02, subd. 7(B) (1999) (current version, effective March 1, 2000, at Minn. R. Juv. P. 69.02, subd. 5(b) (2001)). The district court ordered service by publication in the *St. Paul Legal Ledger* on March 2, 9, and 16, 2000. The published notice stated:

> NOTICE TO: [appellant], mother of the above-named child.
>
> ATTENTION
>
> A petition has been filed * * * alleging among other things that the parental rights of [appellant] to [T.D.], should be terminated upon grounds as stated in the petition filed * * * asking for an order of this Court terminating such parental rights.
>
> THEREFORE, notice is hereby given that the matter of said petition will be called for hearing before the Juvenile Court * * * on March 30, 2000 at 1:30 p.m. or as soon thereafter as the Matter can be heard.
>
> YOU ARE THEREFORE NOTIFIED to be and appear before said Court at said time and place.

■ Appellant argues that the notice did not comply with the requirements of the statute because it did not contain a statement explaining that failure to appear at the hearing could result in a default judgment. The rules provide that the summons or notice must include

> a statement describing the purpose of the hearing and the possible consequence of the hearing that custody of the child may be removed from the par-

ent(s) or legal custodian and placed with another * * *.

Minn. R. Juv. P. 44.03(c) (1999) (current version, effective March 1, 2000, at Minn. R. Juv. P. 69.02, subd. 4(c) (2001) (stating that specifically in termination of parental rights matters, the summons must also contain a statement that if the person fails to appear the court may conduct the hearing in his or her absence and the hearing may result in the termination of parental rights)). The county concedes that the notice does not contain the information required by Minn. R. Juv. P. 44.03(c) but that the error is harmless. " 'Service of process in a manner not authorized by the rule is ineffective service.'" *Lundgren v. Green,* 592 N.W.2d 888, 890 (Minn.App. 1999) (quoting *Tullis v. Federated Mut. Ins. Co.,* 570 N.W.2d 309, 311 (Minn.1997)) (construing Minn. R. Civ. P. 4.03(a)), *review denied* (Minn. July 28, 1999). "Service of process must accord strictly with statutory requirements." *Id.* (quotation omitted); *see, e.g., Hughes v. Lund,* 603 N.W.2d 674, 677 (Minn.App.1999) (finding service under Minn. R. Civ. P. 4.05 ineffectual where appellants did not include an acknowledgment form and self-addressed, postage-prepaid, return envelope in strict accordance with the rule). Because the published summons failed to contain the information required by rule 44.03(c), it is deficient and service of process is ineffective.

Because we conclude that the district court lacked personal jurisdiction over appellant, we need not reach appellant's alleged violation of due process, or whether appellant needed to establish a defense on the merits to prevail in her motion to vacate the order.

## DECISION

Service on appellant by publication was deficient because the published summons did not contain the information required by Minn. R. Juv. P. 44.03(c) (1999). Consequently, the district court did not have personal jurisdiction over appellant to terminate her parental rights to T.D.

**Reversed.**