In the Matter of the **WELFARE OF the CHILDREN OF S.C., n/k/a S.O.**

No. C6–02–1307.

Court of Appeals of Minnesota.

Feb. 18, 2003.

Lynnette Marie Bledsaw, Chadwick and Mertz, P.S.C., Chanhassen, for appellant S.O.

Jason L. Moran, Office of the Le Sueur County Attorney, LeCenter, for respondent Le Sueur County Department of Human Services.

Irene Christensen, Waterville, guardian ad litem.

Paul Hein, Montgomery, guardian for W.H.

Considered and decided by TOUSSAINT, Chief Judge, KALITOWSKI, Judge, and WILLIS, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant S.O. challenges the district court's denial of her motion to vacate the May 8, 2001, order and judgment terminating her parental rights to M.N. and W.H. Appellant alleges that the order and judgment are void due to ineffective service. Because appellant did not file her motion to vacate the judgment within the

90 days required by Minn. R. Juv. P. 81.02, we affirm.

## FACTS

This action involves appellant S.O. and two of her minor children: M.N. and W.H. In July 1999, LeSueur County filed a children-in-need-of-protective-services (CHIPS) petition on behalf of M.N., W.H., and a third child, alleging that the children needed protective services because (1) their parents' emotional, mental, or physical disability, or state of immaturity, left the children without proper care; and (2) the children's behavior, condition, or environment was injurious or dangerous to themselves or others. This appeal does not involve the status of the third child.

In October 1999, S.O. was hospitalized. She left the hospital against medical advice. S.O. attended the CHIPS hearing on November 10, 1999 and denied the petition. P.H., the father of W.H., was awarded temporary custody of W.H. The maternal grandfather of M.N. was initially awarded custody, but did not assume that custody; M.N. was actually placed in foster care. S.O. was to receive supervised visitation with the children.[1]

In November 1999, S.O. was again hospitalized. She was discharged with specific recommendations, including individual therapy and medication monitoring, but failed to attend the scheduled appointments.

S.O. also refused to commit to the out-of-home placement plan (the plan). When Sally Schroer, the child protection worker responsible for S.O.'s case, met with her in February 2000 to review the plan, S.O. refused to sign it without her attorney, even though she and her attorney had

---

1. S.O.'s parental rights to both M.N. and W.H. were terminated, but most of the evidence focused on M.N. W.H. lives with his father, while M.N. remains a ward of the county.

received copies of the plan before the meeting. Eventually, she signed the plan, but then, despite ample notice, failed to attend the mandatory administrative meeting to formally review the plan. According to Schroer, S.O. "made minimal efforts to comply with the plan." She also failed to maintain a permanent residence, to attend school meetings to review M.N.'s testing and individual education plan, and to return paperwork required for M.N. to receive services at his school.

S.O. missed her first scheduled visits. When she again missed three consecutive visits in June 2000, the county discontinued visitation. S.O.'s whereabouts after the last visit in early May 2000 were unknown. On September 1, 2000, therapist Dr. Kari Van Duesen recommended that M.N. be permanently placed with a relative or in a permanent foster home, and not returned to S.O.

In January 2001, Schroer, on behalf of LeSueur County, filed a petition to terminate S.O.'s parental rights to M.N. and W.H. S.O. did not appear at the hearing on that petition held in February 2001, but her attorney appeared on her behalf. He indicated that he had been unable to contact S.O. Although counsel believed that S.O. had been living in Ohio, his letter to her Ohio address was returned. Counsel indicated that an Apple Valley, Minnesota address on file was that of S.O.'s father, but S.O.'s attorney did not believe that the father had heard from S.O. or that S.O. could be contacted there.

The county attorney also unsuccessfully attempted service for the February hearing at the Ohio address, but the papers were returned. He requested that the court order service by publication in Dakota County, Minnesota and in Clermont County, Ohio for the next hearing, to be held in April 2001.

Personal service and service by mail were unsuccessful. Published notice appeared in a Dakota County newspaper March 2–16, 2001, and in a Clermont County, Ohio newspaper March 1–15, 2001. Service by mail was attempted again on March 27, 2001, when the county received S.O.'s new address.

When S.O. did not appear at the April 4 hearing, the court scheduled a default hearing on the termination petition for April 25, 2001. The court ordered that notice of the hearing be sent to S.O. at her home and work addresses.

S.O. once again failed to appear at the April 25 hearing, and the district court proceeded with a default termination. Irene Christensen, the guardian ad litem, testified at the hearing that she had not been in contact with S.O. for several months. Schroer testified that her reasons for supporting termination were set forth in a report completed in November 2000, and that she had not had contact with S.O. for more than one year.

On May 8, 2001, the district court issued its order terminating S.O.'s parental rights to M.N. and W.H. Judgment was entered the same day. S.O. received notice of the decision by certified mail on June 5, 2001.

In late May 2002, more than one year after the final order and judgment terminating S.O.'s parental rights, S.O. moved to vacate, arguing that service was ineffective, the court lacked personal jurisdiction over her, and the order and judgment terminating her parental rights was void. After two hearings, the district court denied the motion to vacate as untimely. This appeal followed.

## ISSUE

Did the district court err in denying appellant's motion to vacate the order and judgment terminating her parental rights?

## ANALYSIS

The district court ruled that S.O.'s motion to vacate was untimely under Minn. R. Juv. P. 81.02. S.O. argues that because service of process was ineffective, the judgment was void due to lack of personal jurisdiction and could be vacated at any time.

■ Whether service of process was proper is a question of law, which we would review de novo. *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 866 (Minn. 2000); *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 814 (Minn.App.1992), *review denied* (Minn. July 16, 1992). However, this court will not reverse a district court's determination regarding whether to vacate a judgment absent an abuse of discretion. *Meyer v. Best W. Seville Plaza Hotel*, 562 N.W.2d 690, 694 (Minn.App.1997) (construing Minn. R. Civ. P. 60.02), *review denied* (Minn. June 26, 1997).

■ S.O. claims that service of process for the April 2001 termination hearing was ineffective and the resulting decision was void because the summons did not contain the statutorily required language and there were other defects in giving notice. *See* Minn. R. Juv. P. 69.02, subd. 4(a)(4), (c) (requiring that summons state consequences for failure to appear), 68.07 (requiring that affidavit of service be filed with the court), 68.02, subd. 3 (requiring affidavit to support service by publication).

■ If service is not effective, the court lacks personal jurisdiction and the resulting juvenile protection decision is void. *In re Welfare of T.D.*, 631 N.W.2d 806, 808 (Minn.App.2001). The rules of juvenile procedure clearly specify that any motion to vacate a final order or judgment on the ground that it is void "shall be made within a reasonable time, but in no event" shall such a motion be made "more than ninety (90) days following the filing of the court's

order." Minn. R. Juv. P. 81.02. This rule was adopted by the supreme court in 1999, and it applies to juvenile protection matters filed on or after March 1, 2000. The termination petition in this matter was filed in January 2001, and is subject to the rule. It is undisputed that S.O. did not file any motion to vacate within 90 days after the filing of the May 8, 2001 order and judgment terminating her parental rights.

S.O. argues that a judgment that is void for lack of personal jurisdiction can be vacated at any time, relying primarily on a termination case that predates the current rule. In *Peterson v. Eishen*, 512 N.W.2d 338 (Minn.1994), a father sought to challenge a default judgment terminating his parental rights eleven years after the final decision. The father claimed that the district court lacked personal jurisdiction, due to inadequate service of process. *Id.* at ·339. The Minnesota Supreme Court agreed, holding that motions to vacate brought under Minn. R. Civ. P. 60.02 must generally be made within a "reasonable time," but there was no time limit for bringing a motion under that rule to set aside a decision that was void for lack of subject-matter or personal jurisdiction. *Id.* at 341. The court reasoned that "a void judgment cannot gain validity by the passage of time." *Id.* The court acknowledged that "exceptional" situations might justify a departure from the general rule that void judgments can be vacated at any time. *Id.*

*Peterson* does not control this appeal because it was not decided under the current juvenile rules, which now both authorize motions to vacate void decisions and impose a specific time limit for such motions. Unlike the civil rule interpreted in *Peterson*, the juvenile rule that applies in this case provides that motions to vacate must be made "within a reasonable time," *and* establishes a 90–day limitations period

for bringing any motion to vacate. *Compare* Minn. R. Civ. P. 60.02 (providing that motions to vacate be made "within a reasonable time" and imposing a limit of one year for some motions, *not including* one alleging that a judgment is void) *with* Minn. R. Juv. P. 81.02 (providing that motions to vacate be made "within a reasonable time" and imposing a limit of 90 days after filing of the decision for *all* such motions, including those alleging that a decision is void). The drafters of rule 81.02 had the benefit of the *Peterson* decision, yet opted to adopt a rule that differs significantly from rule 60.02 and imposes finality after 90 days, even for judgments alleged to be void.

As the court recognized in *Peterson,* exceptional circumstances may justify limitations on the vacation of void judgments. And the supreme court has recently held, unequivocally, that where a juvenile rule differs from rules and statutes that might otherwise apply, the provisions of the rules governing juvenile protection proceedings are controlling. *In re Welfare of J.R.,* 655 N.W.2d 1, 3 (Minn.2003) (holding that Minn. R. Juv. P. 82.02, governing perfection of appeals, controls over the rules of appellate procedure and statutory provisions on appeals).

In *J.R.,* the court specifically rejected the argument of the untimely parent that it should adopt a good cause exception, similar to that previously afforded by Minn. R. Civ. P. 60.02, in cases involving the termination of parental rights. *Id.* at 4. The court emphasized the importance of not delaying "final resolution of these cases" and avoiding an interpretation of the juvenile rules that would "strip [them] of their important function of providing litigants with clear guidelines" for pursuing substantive issues, concluding that allowing relief from the clear procedural requirements of the juvenile rules upon a showing of good cause that might satisfy rule 60.02 "would be in direct conflict" with the court's policy "that these cases in particular need to be expeditiously handled." *Id.* at 5. "While it is true that strict application of the rules of procedure may result in some cases not being heard * * *, equally true is that injustice may result to the children by not enforcing the deadlines set forth in the rules." *Id.* at 5. In light of the supreme court's conclusion that a delay of 14 days barred the claims of the parent in *J.R.,* we cannot agree with S.O. that the district court erred in denying her motion to vacate, which was filed more than 11 months after the deadline specified in Minn. R. Juv. P. 81.02.

Because the district court properly denied S.O.'s motion to vacate, we need not address her arguments concerning the validity of service and notice, the merits of the termination, or the adequacy of representation. Nonetheless, the record contains clear and convincing evidence of abandonment and the actions of the county and S.O. following termination would not be relevant to any evaluation of the sufficiency of the evidence adduced in May 2001, when the final decision terminating parental rights was issued. S.O.'s failure to bring a motion to vacate within 90 days precludes relief from the termination.

## DECISION

Appellant's motion to vacate the order and judgment terminating her parental rights to M.N. and W.H. was untimely because it was not made within 90 days after filing of the final order. The district court did not err in denying the motion.

**Affirmed.**