# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0663

In the Matter of the Welfare of the Child of:
D. J. T. and N. L. T., Parents.

**Filed November 20, 2023**
**Affirmed; motion denied**
**Connolly, Judge**

Houston County District Court
File No. 28-JV-16-894

Mallory K. Stoll, Blahnik, Prchal & Stoll, PLLC, Prior Lake, Minnesota; and

Aaron Rapier, Rapier Law Firm, pro hoc vice, Naperville, Illinois (for appellants D.J.T. and N.L.T.)

Samuel Jandt, Houston County Attorney, Suzanne M. Bublitz, Assistant County Attorney, Caledonia, Minnesota (for respondent Houston County Human Services)

Considered and decided by Connolly, Presiding Judge; Reyes, Judge; and Smith, John, Judge.[*]

## SYLLABUS

If, based on a parent's voluntary consent to an adoption, a district court transfers custody of a child to the Minnesota Commissioner of Human Services under Minn. Stat. § 260C.515, subd. 3 (2022), a fraud-based motion to revoke that consent to adoption is governed by the 90-day deadline in Minn. R. Juv. Prot. P. 22.02, not the six-year statute of limitations for fraud under Minn. Stat. § 541.05, subd. 1(6) (2022).

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**CONNOLLY**, Judge

Appellants challenge the district court's denial of their motion to revoke their consents to adoption. Respondent filed a notice of related appeal, challenging the district court's determination that appellants' motion was timely filed. Because appellants' motion to revoke was untimely, we affirm on that ground, without addressing the district court's decision that appellants failed to allege a prima facie case of fraud.

**FACTS**

Appellants D.J.T. and N.L.T. are the biological parents of F.T., born April 4, 2016, now seven years old. The impetus for this matter was a termination of parental rights (TPR) petition filed in November 2016 by respondent Houston County Human Services. In its TPR petition, respondent alleged that appellants had subjected F.T. to egregious harm after she was diagnosed with end-stage liver failure, a condition that ultimately required a liver transplant in December 2016. *See* Minn. Stat. § 260C.301, subd. 1(b)(6) (2022) (providing that a district court may terminate parental rights when a child has experienced such egregious harm in the parent's care that a reasonable person would believe that reunifying with the parent would be contrary to the child's best interests). Respondent asserted that appellants had failed to treat F.T.'s liver condition, and that it was unlikely appellants would do so in the future. Respondent alleged that appellants' purported association with the group known as "Maranatha"[1] deterred them from seeking medical

---

[1] Appellants define Maranatha as "a loose association or group of Christians who believe alike about God," and "[i]t is like a small Bible church . . . not formally recognized as other

2

treatment for F.T. A social worker at the Mayo Clinic—the hospital that performed F.T.'s liver transplant—reported that appellants had told one of F.T.'s physicians to "[l]et God heal her or take her."

The TPR petition was also based on reports from respondent's social workers that F.T.'s physicians had expressed concerns that appellants knew of F.T.'s liver problems after she was admitted to Gundersen Hospital (Gundersen) on April 15, 2016. And Mayo physicians communicated concerns that appellants, (1) should have sought medical treatment sooner, (2) canceled several of F.T.'s medical appointments, (3) initially refused to consent to required medical procedures, and (4) seemed unlikely to administer the complex life-long care regimen F.T. would require.

Appellants asserted that (1) they were not made aware of F.T.'s liver condition prior to her hospitalization on November 16, 2016, (2) they brought F.T. to the doctor as soon as they suspected something was wrong, and (3) their association with Maranatha did not preclude them from seeking medical care for F.T. A TPR trial was scheduled for February 9, 2017.

On the day of the trial, appellants both signed consents to adoption. Under Minn. Stat. § 260C.515, subd. 3(2), a district court may transfer custody of a child to the commissioner of human services if the parent(s) of that child execute a voluntary consent

churches . . . [and] is more like a family." Respondent alleged that those associated with Maranatha were controlled by their leader, including whether to seek medical treatment. Appellants maintain that respondent's allegations are unfounded and that Maranatha has no religious tenets related to making medical decisions. Appellants' assertion that respondent showed bias against them because of their association with Maranatha permeates much of their argument.

to the child's adoption, and the district court accepts the consent(s). Here, appellants verified their consents on the record, and the district court accepted and signed appellants' consent forms. The district court found that appellants had sufficient time to review their consents to adoption with their attorney, that they had waived their right to a permanency trial, and that they "agreed that once the Court sign[s] the Consent to Adoption it bec[omes] irrevocable." On February 16, 2017, the district court filed an order memorializing its findings from the hearing, transferring custody of the child to the commissioner, and giving its consent to F.T.'s adoption. The next day, the court administrator served the notice of the filing of the court's order. F.T. was adopted on October 24, 2017, by the couple appellants had chosen.

On February 9, 2023, exactly six years after appellants consented to F.T.'s adoption, they filed a motion under Minn. Stat. § 260C.515, subd. 3(9) to revoke their consents to the adoption, on the basis of alleged fraud. Appellants based their motion on their affidavits asserting that respondent fraudulently induced them to sign their consents to adoption by misrepresenting the obligations it had to conduct a relative search, and the consequences of an involuntary TPR. Appellants also alleged that they were misled by both respondent and Gundersen because both had withheld pertinent portions of F.T.'s medical records and misrepresented F.T.'s medical needs and medical history. Appellants alleged that, if they had known that F.T. could have been placed with their relatives and that respondent's evidence was not as credible as they had thought it was, they would not have consented to F.T.'s adoption and would have gone to trial instead. Appellants requested an evidentiary hearing on their motion. Respondent filed a motion in opposition, arguing in a

4

memorandum that appellants' motion was untimely under Minn. R. Juv. Prot. P. 22.02 and that appellants failed to allege a prima facie case of fraud.

The district court denied appellants' motion. Although it ruled that appellants' motion was timely filed pursuant to Minn. Stat. § 541.05, subd. 1(6), it concluded that appellants had failed to allege a prima facie case of fraud.

Appellants took this appeal, and respondent filed a related appeal, challenging the district court's determination that Minn. Stat. § 541.05, subd. 1(6), governs the timeliness of appellants' motion. *See* Minn. R. Juv. Prot. P. 23.04 (stating that, in an appeal in a juvenile protection matter, "any party or the county attorney may obtain review of an order entered in the same case which may adversely affect that person by filing a notice of review"); *see also* Minn. R. Civ. App. P. 103.02, subd. 2, 106 (addressing a respondent's ability to seek review of a district court's ruling, generally).

**ISSUE**

Did the district court err by determining that appellants' motion was timely filed?

**ANALYSIS**

The juvenile protection rules "govern the procedure for juvenile protection matters." Minn. R. Juv. Prot. P. 1.01. "Juvenile protection matters include all matters defined in Rule 2.01(19)." *Id.* Rule 2.01(19)(f) defines "juvenile protection matters" to include "permanent placement matters as defined in Minn. Stat. §§ 260C.503-.521, including . . . guardianship to the Commissioner of Human Services[.]" Minn. R. Juv. Prot. P. 2.01(19)(f). This definition of "juvenile protection matters" includes proceedings under Minn. Stat. § 260C.515, subd. 2(2) (2022), which governs appellants' original

5

consent to adoption and the district court's resulting ability to transfer custody of the child to the commissioner. Similarly, the provision under which appellants filed their current motion to vacate those consents—Minn. Stat. § 260C.515, subd. 3(9)—is also within this portion of the definition of a "juvenile protection matter." Thus, we conclude that the rules of juvenile protection procedure govern appellants' motion to vacate their consents.

The Minnesota Rules of Juvenile Protection Procedure establish a uniform process to secure permanency for children, and to "provide a just, thorough, speedy, and efficient determination of each juvenile protection matter." Minn. R. Juv. Prot. P. 1.02(b); *see In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 5 (Minn. 2003). The paramount consideration in child protection cases is the child's best interests, and "[t]he laws relating to juvenile protection proceedings shall be liberally construed to carry out [this] purpose." Minn. Stat. § 260C.001, subds. 3(3), 4 (2022). We review the interpretation of the rules of juvenile protection procedure de novo. *In re Welfare of Child of R.K.*, 901 N.W.2d 156, 159 (Minn. 2017) (interpreting rules of juvenile protection procedure de novo to determine whether appeal was timely).

Respondent challenges the district court's determination that Minn. Stat. § 541.05, subd. 1(6), governs the timeliness of appellants' motion, arguing that the 90-day deadline under Minnesota Rule of Juvenile Protection 22.02 governs appellants' motion for relief based on alleged fraud. Appellants argue that their motion was timely for two reasons: (1) the 90-day deadline under rule 22.02 does not apply to appellants' motion because they are not seeking relief from a final order; and, alternatively, (2) the general statute of limitations

6

for fraud under Minn. Stat. § 541.05, subd. 1(6), does apply to their motion. We address each argument in turn.

## A.     The 90-day deadline under Minnesota Rule of Juvenile Protection 22.02

When the responsible child-protection agency files a TPR petition, various dispositions are available, including a district court accepting a parent's consent to the adoption of the child and transferring custody of the child to the commissioner. Minn. Stat. § 260C.515, subd. 3. A voluntary consent is irrevocable upon its acceptance by the court, unless the court finds the parent's consent was obtained by fraud. Minn. Stat. § 260C.515, subd. 3(2)(i), (9). But section 260C.515 is silent as to the procedure an aggrieved party must follow to seek relief under the statute. *Id.* Minnesota Rule of Juvenile Protection Procedure 22.02 provides the mechanism:

> Upon motion and upon such terms as are just, the court may relieve a party . . . from a *final order or proceeding* . . . and may order a new trial or grant such other relief as may be just for . . . fraud (whether denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(Emphasis added.) Rule 22.02 also dictates that "in no event shall [a motion] be [brought] more than 90 days following the service of notice by the court administrator of the filing of the court's order." Minn. R. Juv. Prot. P. 22.02.

Respondent argues that the district court erred by applying the six-year statute of limitations pursuant to Minn. Stat. § 541.05, subd. 1(6), instead of the 90-day deadline imposed by Minn. R. Juv. Prot. P. 22.02. Appellants argue that because they are not seeking relief under rule 22.02 and instead seek to revoke their consents to adoption under

7

Minn. Stat. § 260C.515, subd. 3(9), they are not subject to the 90-day deadline of Minn. R. Juv. Prot. P. 22.02.

The issue before us is whether rule 22.02 sets the time limits for a motion to revoke a parent's consent to adoption, imposing a 90-day filing deadline, or if the district court correctly applied the six-year civil fraud statute of limitations set out in Minn. Stat. § 541.05, subd. 1(6).

When interpreting rules of procedure, "we look first to the plain language of the rule and its purpose." *R.K.*, 901 N.W.2d at 160 (quotation omitted). "Where the language is plain and unambiguous, that plain language must be followed." *Id.* (quotation omitted). Only when the statute, or rule, has more than one reasonable interpretation do we look to other factors, *see Christianson v. Henke*, 831 N.W.2d 532, 537-38 (Minn. 2013); we keep in mind the presumption against reaching a result that is absurd or unreasonable. Minn. Stat. § 645.17(1) (2022).

The rules of juvenile protection procedure govern juvenile-protection matters. Minn. R. Juv. Prot. P. 1.01. And unless otherwise specifically provided for, the Minnesota Rules of Civil Procedure do not apply. Minn. R. Juv. Prot. P. 3.01.

Our reading of these statutes and rules is consistent with a significant body of caselaw. In juvenile-protection cases, "it is well-settled that a rule displaces an inconsistent statute with respect to matters of court procedure." *In re Welfare of Children of L.L.P.*, 836 N.W.2d 563, 569 (Minn. App. 2013). And Minnesota courts have long held that "where a juvenile rule differs from rules and statutes that might otherwise apply, the provisions of the rules governing juvenile protection proceedings are controlling." *In re*

8

*Welfare of Children of S.C.*, 656 N.W.2d 580, 581 (Minn. App. 2003). Thus, courts apply the narrower juvenile protection rules over their civil counterparts.

In *J.R.*, the Minnesota Supreme Court rejected the mother's argument that her failure to timely serve a notice of appeal on the guardian ad litem—only 14 days past the deadline—should be heard under the "good cause exception" available under Minn. R. Civ. P. 60.02. 655 N.W.2d at 4. The supreme court reasoned that applying the exception found in the civil rules would delay permanency proceedings, which "would be in direct conflict with [their] own policy, as reflected by the juvenile rules, that these cases in particular need to be expeditiously handled." *Id.* at 5, (comparing what was then Minn. R. Juv. Prot. P. 82.02,[2] subd. 2, providing 30 days to appeal juvenile protection matters, with Minn. R. Civ. App. P. 104.01, subd. 1, providing 60 days to appeal in civil cases). It explained that although "strict application of the rules of procedure may result in some cases not being heard on appeal, equally true is that injustice may result to the children by not enforcing the deadlines set forth in the rules." *Id.*

---

[2] Minnesota Rule of Juvenile Protection Procedure 82.02 was renumbered effective January 1, 2004, to rule 47.02. *Order Promulgating Amendments to the Rules of Juvenile Protection Procedure and the Rules of Adoption Procedure*, Nos. ADM10-8040 & ADM10-8041 (Minn. Nov. 12, 2003). Notably, the appeal deadline was shortened from 30 to 20 days, effective August 1, 2009. *Order Promulgating Amendments to the Rules of Juvenile Protection Procedure and the Rules of Adoption Procedure*, Nos. ADM10-8040 & ADM10-8041 (Minn. June 10, 2009); *see also* Minn. R. Juv. Prot. P. 23.02 2019 advisory comm. note (amending the rule to "expedite the process based on federal standards for permanency timelines and best practices"). The juvenile rules were amended again effective September 1, 2019, renumbering rule 47.02 to rule 23.02. Minn. R. Juv. Prot. P. 23.02. *Order Promulgating Amendments to the Rules of Juvenile Protection Procedure and the Rules of Adoption Procedure*, Nos. ADM10-8040 & ADM10-8041 (Minn. May 13, 2019).

In *S.C.*, we upheld the district court's denial of a mother's motion to vacate the order terminating her parental rights when that motion had been filed more than a year after the district court's order was issued, surpassing the 90-day deadline imposed by the then-applicable juvenile rules. 656 N.W.2d at 581. In reaching that decision, we declined to apply Minn. R. Civ. P. 60.02, under which motions to vacate could be filed for a longer time. *Id.* at 584. We also expressly rejected mother's argument that *Peterson v. Eishen*, 512 N.W.2d 338 (Minn. 1994), was controlling. *Id.* at 583-584.

In *Peterson*, the supreme court applied Minn. R. Civ. P. 60.02 to a father's motion to vacate a judgment of paternity and child support orders. 512 N.W.2d at 341. But *Peterson* was decided *before* the creation of the current juvenile rule that imposes the 90-day deadline. *S.C.*, 656 N.W.2d at 583-84. We explained that, because "the drafters of [then existing] rule 81.02[3] had the benefit of the *Peterson* decision, yet opted to adopt a rule that differs significantly from Minn. R. Civ. P. 60.02," the juvenile rules should apply over the general civil rules. *Id.* at 584. By that reasoning and by relying on the supreme court's decision in *J.R.*, we held that the mother's motion to vacate—filed over a year after the district court's order was issued—was untimely. *Id.*

---

[3] Minn. R. Juv. Prot. P. 81.02 was renumbered to rule 46.02, effective January 1, 2004. *Order Promulgating Amendments to the Rules of Juvenile Protection Procedure and the Rules of Adoption Procedure*, Nos. ADM10-8040 & ADM10-8041 (Minn. Nov. 12, 2003). And rule 46.02 was renumbered to rule 22.02, effective September 1, 2019. *Order Promulgating Amendments to the Rules of Juvenile Protection Procedure and the Rules of Adoption Procedure*, Nos. ADM10-8040 & ADM10-8041 (Minn. May 13, 2019). No substantive changes were made—the deadline has always been 90 days. *See* Minn. R. Juv. Prot. P. 22.02 2019 advisory comm. note.

Consistent with the relationship between the definitions of "juvenile protection matters" in rule 2.01(19)(f) and Minn. Stat. §§ 260C.515, subd. 3(2), (9)(3); .303-.521 (2022), as well as our caselaw, we determine that rule 22.02 applies to appellants' motion.[4] And rule 22.02 is not ambiguous; it plainly states that a motion for relief based on alleged fraud in a juvenile protection matter "shall be made within a reasonable time, but in no event shall it be more than 90 days following the service of notice by the court administrator of the filing of the court's order." Minn. R. Juv. Prot. P. 22.02.

Here, appellants' case was initiated with a TPR petition and resolved with a consent to adoption and an associated transfer of custody to the commissioner. These matters are governed by the rules of juvenile protection. Minn. Stat. §§ 260C.301, subd. 1(b)(6); .515, subd. 3(2); *see* Minn. R. Juv. Prot. P. 2.01(19)(e), (f) (defining "juvenile protection

---

[4] We note that, even if this matter were treated as an adoption matter, a similar analysis would apply. Children under the guardianship of the commissioner of human services are adopted under Minn. Stat. §§ 260C.601-.635 (2022). Minn. Stat. § 260C.601, subd. 1(a)(2). The Minnesota Rules of Adoption Procedure govern "adoption matters," including "adoptions of children under the guardianship of the commissioner of human services pursuant to Minnesota Statutes § 260C.601-.637." Minn. R. Adopt. P. 1.01. And the adoption rules include a similar 90-day limit on fraud-based motions for relief. Minn. R. Adopt. P. 47.02(c). However, we distinguish the present case from our decision in *In re Adoption of T.A.M.*, where we affirmed the district court's dismissal of mother's fraud-based motion to vacate her child's adoption, as untimely under the civil procedure rules. 791 N.W.2d 573, 578 (Minn. App. 2010). We concluded that the district court incorrectly applied Minn. R. Adopt. P. 47.02 because that rule was not in effect at the time of the child's adoption; therefore, the district court's application of Minn. R. Civ. P. 62.02 was proper. *Id.* The present case differs substantially, as an earlier iteration of Minn. R. Juv. Prot. P. 22.02—imposing a 90-day deadline—was in effect at the time appellants consented to F.T.'s adoption. Therefore, we do not read *T.A.M.* to suggest that applying the civil rules is appropriate in this context.

matters" to include TPR matters and transfers of custody to the commissioner, respectively).

At the February 9, 2017 hearing, appellants testified that they had signed consents to F.T.'s adoption and agreed that, once the district court signed their consents, they would become irrevocable, absent a finding of fraud. Under the plain language of juvenile protection rule 22.02, when appellants chose to move for relief under section 260C.515, subd. 3(9), they were required to do so within a reasonable time, not to exceed 90 days following the service of notice of the filing of the district court's order. Appellants' failure to do so rendered their motion untimely.

Our decision to apply the shorter deadline found in the juvenile-protection rules is consistent with Minnesota's policy of strictly adhering to the rules of juvenile procedure and expeditiously resolving child permanency matters. *J.R.*, 655 N.W.2d at 5 (concluding that mother's failure to properly serve guardian ad litem until 14 days after the 30-day deadline found under the applicable juvenile rule, was untimely); *S.C.*, 656 N.W.2d at 584 (concluding motion filed over one year after the juvenile rule's 90-day deadline was untimely).

Appellants insist that rule 22.02 is inapplicable to their motion because they seek relief from their underlying consents to adoption, and not from a final order or proceeding. *See* Minn. R. Juv. Prot. P. 22.02 (providing relief from "a final order or proceeding").

Whether a signed agreement, later used as the basis for a district court's final order, is properly a subject of a fraud-based motion for relief was examined in *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997). In *Shirk*, a wife and husband signed a stipulated

12

dissolution settlement agreement which was approved by the district court and incorporated into the final divorce judgment. *Id.* at 520. The wife later moved to vacate portions of the settlement agreement alleging that her husband had committed fraud in failing to fully disclose his income and assets during the dissolution negotiation, and that her counsel was incompetent. *Id.* at 520-21. The supreme court held that, when the district court entered the divorce judgment, the stipulation merged into that judgment and could no longer be attacked separately from the judgment itself. *Id.* at 522. *Shirk* also noted that, once a judgment is entered on the stipulation, "the need for finality bec[ame] of central importance." *Id.* And allowing a party to attack the stipulation separately from the judgment would have undercut that purpose.[5] *See id.*

By analogy to *Shirk*, we conclude that, when the district court accepted appellants' consents to adoption and transferred custody of F.T. to the commissioner, appellants' consents effectively merged into that order. *See id.* At that point, appellants were precluded from attacking their consents to the adoption separately from the order, and the only proper subject for a motion for relief was the district court's order, itself. *See id.* Therefore, we conclude appellants are precluded from arguing they are seeking relief from anything other than the district court's order. Any fraud-based motion for relief from a final order in juvenile protection matters is subject to a 90-day deadline. Minn. R. Juv. Prot. P. 22.02.

---

[5] Section 518.145 offers relief on the basis of fraud that is analogous to Minn. R. Juv. Prot. P. 22.02(c). *See* Minn. Stat. § 518.145, subd. 2 (2022) (providing one-year deadline for motions for relief from final order on basis of fraud).

Moreover, the record supports applying rule 22.02 for two reasons. First, appellants' consent-to-adoption forms state: "I understand that after the Court accepts my consent to adoption, it is irrevocable, and I understand that it cannot be withdrawn unless the Court finds that my consent was obtained by fraud and issues an order permitting revocation." Because the acknowledgement states that appellants' consents became irrevocable only *after* the district court accepted them, the statute providing for a consent's irrevocability, Minn. Stat. § 260C.515, is not relevant until *after* the district court's order is filed. *See* Minn. Stat § 260C.515, subd. 3(9) ("[A] consent to adoption under this section shall be irrevocable *upon* acceptance by the court" (emphasis added)). Therefore, appellants' right to relief under section 260C.515, subdivision 3(9), was unavailable until after the order was signed and appellants' individual consents merged with the final order. *See Shirk*, 561 N.W.2d at 522; *see also* Minn. Stat. § 260C.515, subd. 3(2)(i).

Second, the district court's "Notice of Filing of Order" contains the same language found in rule 22.02—providing for a 90-day deadline—for a motion seeking relief on the basis of alleged fraud.[6] Given this context, it appears that the district court intended a motion for relief from its order, on the basis of fraud, would be brought within 90 days of service of the notice of filing by the district court administrator. Minn. R. Juv. Prot. P. 22.02.

---

[6] The language in appellants' consents to adoption cites to Minn. R. Juv. Prot. P. 46.02, which again, was renumbered in 2019, to rule 22.02, with no substantive changes. Thus, we infer that the consents cite a prior numeration of the rule.

14

Because appellants' motion was filed nearly six years after the service of the notice of the filing of the district court's order, the filing was well beyond the juvenile rule's 90-day deadline, and we conclude that the district court erred by determining that appellants' motion was timely filed.[7] *See* Minn. R. Juv. Prot. P. 22.02.

**B.      The six-year deadline under Minn. Stat. § 541.05, subd. 1(6)**

As discussed above, the Minnesota statutes do not contain a specific deadline for bringing motions to revoke fraudulently obtained consents to adoption. Minn. Stat. § 260C.515, subd. 3(2)(i). But there is a six-year statute of limitations for bringing a civil claim based on fraud. Minn. Stat. § 541.05, subd. 1(6). Section 541.05 provides all fraud "actions shall be commenced within six years" of the date the plaintiff discovered "the

---

[7] Appellants also alleged that their motion was timely because respondent's and Gundersen's misrepresentations constituted fraud upon the court, which, if true, would eliminate the deadline for bringing a motion for relief based on alleged fraud. *In re Welfare of Children of R.A.J.*, 769 N.W.2d 297, 303 (Minn. App. 2009) (stating a district court "has the inherent power to set aside a final judgment if it determines that such a judgment amounts to fraud upon the court" (quotation omitted)). "Fraud on the court exists where a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair." *In re Welfare of C.R.B.*, 384 N.W.2d 576, 579 (Minn. App. 1986) (vacating a termination of parental rights order against mother when the district court had relied on father's misrepresentations that mother had voluntarily signed a termination to her parental rights when making its determination), *rev. denied* (Minn. May 29, 1986). We agree with the district court that there was no fraud upon the court here. Appellants' allegations of fraud pertain to the merits of respondent's TPR petition. But the matter was resolved through appellants' consents to adoption—which appellants admit were properly executed and accepted by the district court. The district court did not rely on any alleged misrepresentations related to the circumstances of the underlying TPR petition when it filed its order accepting appellants' consents to adoption. Instead, it properly limited its review to appellants' representations at the hearing, where they consented to F.T.'s adoption. Because the district court did not err in ruling there was no fraud upon the court, appellants are precluded from evading rule 22.02 on this alternative theory.

facts constituting the fraud." Minn. Stat. § 541.05, subd. 1; *see also Black's Law Dictionary* 275 (11th ed. 2019) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person").

Appellants argue that their motions seeking relief from their consents to adoption were timely because they filed their motions within the six-year window for fraud claims allowed by the civil statute of limitations. *See* Minn. Stat. § 541.05, subd. 1. We are not persuaded.

Appellants seek to vacate an existing order that was signed pursuant to their consents to adoption. They have not commenced a new action. *See* Minn. Stat. § 541.05, subd. 1. As previously noted, allowing a parent to contest the district court's acceptance of consents to adoption six years after the district court accepted those consents would unreasonably circumvent the purpose of the rules in "provid[ing] a just, thorough, speedy, and efficient" resolution to juvenile protection proceedings. Minn. R. Juv. Prot. P. 1.02; *see also* Minn. Stat. § 645.17(1). The "dismissal of an untimely appeal does not occur in a vacuum," as "[e]ach delay in the termination of a parent's rights equates to a delay in a child's opportunity to have a permanent home and can seriously affect a child's chance for permanent placement." *J.R.*, 655 N.W.2d at 5.

Here, we are far past the point of *seeking* a permanent placement for F.T.; instead, appellants ask this court to undo a final adoption by a couple they chose. Removing F.T. from her home would frustrate the purpose of the rules of juvenile protection and require us to reach an unreasonable result. *See* Minn. Stat. § 645.17(1). We decline to do so.

16

In sum, appellants' motion was untimely because it was not brought within 90 days of service of the filing of the district court's order accepting appellants' consents to F.T.'s adoption. Although the district court erred in applying the six-year statute of limitations for bringing an action based on fraud, we agree that appellants are not entitled to relief. Because we conclude that their motion was untimely, we need not address appellants' claim that their consents were fraudulently induced.[8]

## DECISION

Because the deadline for appellants' fraud-based motion under Minn. Stat. § 260C.515, subd. 3(9), to revoke their consents to adoption is set by Minn. R. Juv. Prot. P. 22.02, and appellants filed their motion after the expiration of the 90-day deadline set by that rule, we agree with respondent that it was untimely; therefore, we affirm the district court's denial of relief on other grounds.

**Affirmed; motion denied.**

---

[8] Respondent filed a motion to strike certain portions of appellants' reply brief. Because we decline to reach the merits of appellants' argument, respondent's motion is denied as moot. *Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2007) (denying as moot appellant's motion to strike portions of respondent's brief when those portions were not considered by the court).