**Leah GALBREATH, Plaintiff,**

**Ramsey County, Appellant,**

v.

**Chico COLEMAN, Respondent.**

**No. C2–98–2156.**

Court of Appeals of Minnesota.

July 20, 1999.

Susan Gaertner, Ramsey County Attorney, Theresa J. Walton, Assistant County Attorney, St. Paul, for appellant.

Chico Coleman, Minneapolis, pro se respondent.

Considered and decided by RANDALL, Presiding Judge, DAVIES, Judge, and SCHULTZ, Judge.*

## OPINION

DAVIES, Judge

Appellant county challenges an order vacating default paternity and child support judgments for lack of personal jurisdiction. We affirm.

## FACTS

Leah Galbreath gave birth to N.G. on September 1, 1982. Galbreath was then living with respondent Chico Coleman. The parties later separated and, in 1991, appellant Ramsey County commenced a paternity action against Coleman. The summons and complaint were served on Coleman by leaving a copy with Coleman's brother at their mother's home. Coleman did not respond and did not appear at a hearing, where he was adjudicated N.G.'s father. A default paternity judgment was entered against Coleman and a copy of the adjudication order was sent to him at his mother's home. Coleman also failed to appear at a child-support hearing. Support was set at $250 per month, and Ramsey County was awarded a $3,433.52 judgment for child-support arrearages. A copy of the support order and arrearages judgment was mailed to Coleman at his mother's home.

On April 15, 1997, Coleman was personally served with an order to show cause why he should not be held in contempt for failure to pay child support. The initial contempt hearing, scheduled for May 1997, was continued for an evidentiary hearing in July. At the July hearing, Coleman requested a continuance so that he could make written motions challenging notice of the paternity and support judgments and requesting blood tests.

On September 15, 1997, Coleman asked the court to vacate the paternity and child support judgments. He also asked the court to order blood tests. In an order filed November 4, 1997, the court granted Coleman's request for blood tests and reserved all other issues. Finally, at a May 28, 1998, hearing, after the test results indicated a more than 99% probability of his paternity, Coleman conceded that he is N.G.'s father. But he argued the court should vacate the default paternity judgment because the court lacked personal jurisdiction over him at the time the paternity judgment was entered.

In an October 1, 1998, order, the district court concluded that Coleman "had no actual effective notice of these proceedings prior to service of the Order To Show Cause on April 15, 1997." The court vacated the paternity judgment, the child-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

support order and subsequent cost-of-living adjustments, and the $3,433.52 judgment for arrearages. The district court then adjudicated Coleman the father of N.G. and scheduled a hearing for future support. Ramsey County now appeals from the October 1, 1998, order and argues that Coleman waived his right to make a personal-jurisdiction challenge to the earlier judgments.

## ISSUE

Did respondent waive his right to challenge the court's personal jurisdiction to issue a previous default judgment either by invoking the power of the court or by failing to timely press his motion to dismiss for lack of jurisdiction?

## ANALYSIS

■ Absent an abuse of discretion, a reviewing court will uphold a district court's decision to vacate a judgment under Minn. R. Civ. P. 60.02.. *Meyer v. Best Western Seville Plaza Hotel*, 562 N.W.2d 690, 694 (Minn.App.1997), *review denied* (Minn. June 26, 1997). But when a district court has decided a purely legal issue, this court reviews the decision de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). When the facts are undisputed, the existence of personal jurisdiction is a question of law. *Federal–Hoffman, Inc. v. Fackler*, 549 N.W.2d 93, 95 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996).

■ Under Minn. R. Civ. P. 60.02(d), a court may relieve a party from a judgment if "[t]he judgment is void." The court that entered the judgment may vacate a void judgment at any time. *Peterson v. Eishen*, 512 N.W.2d 338, 341 (Minn. 1994). Generally, a valid judgment cannot be entered against a party absent lawful service of process on that party. *Id.* at 339–40.

■ Appellant does not dispute that Coleman did not receive effective notice of the paternity action. But "a party who takes or consents to. any step in. a proceeding which assumes that jurisdiction exists or continues has made a general appearance" and is subject to the court's jurisdiction. *Id.* at 340 (citation omitted). Further, a defendant who takes an "affirmative step invoking the power of the court or implicitly recognizing its jurisdiction" submits to the court's jurisdiction. *Id.* Appellant argues that Coleman waived his challenge to the default paternity judgment by moving for blood tests.

In *Peterson*, a default paternity judgment was entered against Eishen in 1982. *Id.* at 339. Eishen contacted the county attorney's office in 1986 and agreed to submit to a blood test. *Id.* The blood test results indicated a more than 99% probability that Eishen was the child's father. *Id.* In 1991, Eishen moved to vacate the default paternity judgment, asserting that it was void for lack of personal jurisdiction. *Id.* The district court vacated the judgment because there had been inadequate service of process. *Id.* The supreme court affirmed, concluding that Eishen's voluntary submission to a blood test without any contact with the court did not constitute submission to the district court's jurisdiction. *Id.* at 339–40.

The situation was different in *Wachsmuth v. Johnson*, 352 N.W.2d 132 (Minn.App.1984). There an adjudicated father filed a motion to reduce child-support arrearages and to temporarily suspend his support obligation. *Wachsmuth*, 352 N.W.2d at 133. He did this before he filed a motion to vacate the underlying default paternity judgment for a lack of personal jurisdiction. *Id.* This court concluded that the father's initial motion constituted a general appearance and subjected him to the court's jurisdiction. *Id.*; *see also Igo v. Chernin*, 540 N.W.2d 913, 914 (Minn.App.1995) (taking deposition on merits of case before asserting objection to jurisdiction constituted waiver of objection to jurisdiction).

Here, Coleman moved, in September 1997, for an order requiring blood tests

and for an order vacating the paternity adjudication based on a lack of notice. Unlike the father in *Peterson*, Coleman had contact with the court. But this case is distinguishable from *Wachsmuth* because Coleman raised the jurisdiction issue at the same time he invoked the court's power by requesting an order for blood tests.

Several months passed between Coleman's raising the jurisdiction issue in his September 1997 motion and his arguing the jurisdiction issue at the May 1998 hearing. Appellant argues that Coleman waived his jurisdictional challenge because of this delay. *See Federal–Hoffman*, 549 N.W.2d at 95–96 (to preserve personal jurisdiction argument responding party must act promptly after asserting counterclaim). But, here, Coleman did not waive his objection; the district court, not Coleman, decided to delay argument on the issue. The record indicates Coleman's motion, filed September 15, 1997, both requested blood tests and raised the jurisdiction argument. The court's November order granted Coleman's motion for blood tests and reserved all other issues. Thus, the court, not Coleman, delayed Coleman's jurisdictional argument.

The district court was justified in its decision to reserve other issues until after the blood tests because all other issues would be moot if Coleman were proved not to be N.G.'s father. *See County of Hennepin ex rel. Bartlow v. Brinkman*, 378 N.W.2d 790, 795 (Minn.1985) (default paternity judgment to be vacated if adjudicated father submitted blood test results disproving paternity); *Wessels v. Swanson*, 289 N.W.2d 469, 470 (Minn.1979) (same). The district court's decision to take this practical step before addressing Coleman's personal-jurisdiction defense did not estop Coleman from challenging the court's personal jurisdiction to grant the default paternity judgment against him.

■■■■ Invoking the court's power in the way Coleman did here (by moving for blood tests) might also be viewed as waiving the jurisdiction issue prospectively. That is to say, that invoking the power of the court only subjects one to its jurisdiction thereafter.[1] But, here, even if respondent invoked the court's power in the September hearing or subsequent hearings, he was not barred from raising his argument that the years' earlier adjudication of parentage and subsequent judgments for child support were void for lack of jurisdiction because he did nothing to indicate that he accepted the default judgments without challenge.

### DECISION

In this circumstance, Coleman preserved his right to later challenge the court's jurisdiction to enter a previous default paternity judgment against him, having raised the jurisdictional argument at the same time he invoked the court's power. The district court did not abuse its discretion by vacating the default paternity judgment.

**Affirmed.**

---

1. In *Wachsmuth*, an objection to personal jurisdiction in a default judgment was waived by invoking of the court's power. 352 N.W.2d at 133. But, in *Wachsmuth*, the father had ratified the earlier judgment by first moving to modify the judgment rather than to vacate it. *Id.* Here, appellant did nothing to ratify the default judgments.