**In the Matter of the WELFARE OF the CHILDREN OF R.A.J., D.W.A., and L.L.F., Parents.**

**No. A09–0140.**

Court of Appeals of Minnesota.

July 21, 2009.

Frank Bibeau, Laura Vedder, Rebecca McConkey, Leech Lake Band of Ojibwe, Cass Lake, MN, B. Tammy Swanson, Phyllis Tousey, Swanson, Drobnick & Tousey, P.C., Woodbury, MN, for appellant Leech Lake Band of Ojibwe.

Thomas B. Hatch, Kate E. Jaycox, Lauren E. Schrero, Robins, Kaplan, Miller & Ciresi L.L.P., Mark D. Fiddler, Fiddler Law Office, P.A., Minneapolis, MN, for respondent guardian ad litem Courtney Haskins.

Tim Faver, Beltrami County Attorney, Annie Claesson–Huseby, Chief Assistant County Attorney, Bemidji, MN, for respondent Beltrami County.

Donald Kirchner, Kirchner Law Firm, PLLC, Laurie Ann Robinson, Bemidji, MN, for respondent R.A.J.

Margaret Dow, Bemidji, MN, for respondent D.W.A.

Scott Collins, Bagley, MN, for respondent L.L.F.

Considered and decided by KALITOWSKI, Presiding Judge; KLAPHAKE, Judge; and HUDSON, Judge.

# OPINION

KALITOWSKI, Judge.

Appellant Leech Lake Band of Ojibwe (the band) challenges the district court's jurisdiction to vacate an order transferring a child-welfare proceeding from the district court to the Leech Lake Tribal Court (the tribal court), after the district court determined that the transfer was procured through misrepresentations. The band argues that under the Indian Child Welfare Act (ICWA), principles of tribal sovereignty, and foreign caselaw, the district court was without jurisdiction to vacate its transfer order.

## FACTS

This case began in August 2007 when an investigator for Beltrami County Human Services (county services) filed a petition for child in need of protection or services (CHIPS). The band was served with the petition and Naomi Paulson, a social worker with Leech Lake Family Services (tribal family services), became involved in the case. The subjects of the petition were three Indian children eligible for membership in the band not domiciled within the band's reservation. At the admit/deny hearing, the children's mother, R.A.J., admitted that her children were in need of protection, and the district court adjudicated them as children in need of protection or services. In November 2007, the children were placed in a licensed Native American foster home under the supervision of county services. In March 2008, county services notified the district court that management of the CHIPS case would be transferred to tribal family services.

By the April 2008 review hearing, tribal family services had assumed case management of the CHIPS case. At the review hearing, the children's maternal grandmother, V.J., informed the district court that she had obtained her foster-care license and expressed a strong desire to have the children placed with her. Despite this request, the district court made no changes to the children's placement.

At the next review hearing in May 2008, tribal family services recommended moving the children into V.J.'s home, but Courtney Haskins, the children's guardian ad litem (GAL), recommended that the children remain at their Native American foster home. The district court found that the children were doing well in the foster home and ordered no changes in placement. The district court scheduled a permanency determination and an admit/deny hearing on permanency for July 3, 2008.

The movement toward permanency was delayed by the band's June 25, 2008 motion to transfer the proceeding to tribal court pursuant to ICWA. The band subsequently filed a June 30, 2008 tribal court order purporting to accept the transfer of the proceeding. At the July 3, 2008 admit/deny hearing, R.A.J. and L.L.F. (the father of one of the children) supported transfer to tribal court. Beltrami County did not object to transfer, but the GAL strongly objected to the band's motion.

In a July 21, 2008 order, the district court denied the band's motion, finding that the GAL had shown good cause under ICWA to deny transfer to tribal court. The district court concluded that: (1) the CHIPS proceedings had reached an advanced stage when the tribe filed its motion to transfer the proceeding; (2) transfer to tribal court would delay a permanency determination and therefore be harmful to the well-being of the children; and (3) transfer would not be in the best interests of the children. The band did not appeal from this order.

In August 2008, the GAL filed a termination-of-parental-rights (TPR) petition.

At the admit/deny hearing for the TPR petition, the district court entered a denial for all three parents. The band asked the court to reconsider its decision denying transfer to tribal court. The district court denied this request but permitted the band to submit written argument. Following the band's submission of a memorandum in favor of transfer and an opposing memorandum from the GAL, the district court again denied the transfer request. The band did not appeal this order, and the TPR trial was set for November 20, 2008.

Leading up to the TPR trial, the band, the GAL, and the district court discussed the possibility of transferring the proceeding to tribal court. An agreement was reached and the district court filed an order transferring the proceeding to tribal court on December 2, 2008 (the transfer order). The transfer order set forth, as the basis for the agreement, the GAL's withdrawal of her objections to transfer based on the band's agreement to: (1) immediately file a permanency petition in tribal court; (2) immediately pursue permanent placement of the children; (3) oppose placement with V.J. and any other member of R.A.J.'s immediate family; (4) maintain Naomi Paulson as the case manager; and (5) maintain Courtney Haskins as the GAL until permanent placement of the children has occurred. The transfer order also specifically stated that "[u]pon acceptance of jurisdiction by the Tribal Court, jurisdiction in this case shall be terminated."

Three days later, on December 5, 2008, the GAL moved to stay the transfer order on the ground that the band breached the conditions for transfer. Specifically, the GAL affidavit claimed that the band had terminated Naomi Paulson as the case manager and that tribal family services intended to remove the children from their Native American foster home. Based on the GAL's motion, on December 8, 2008, the district court concluded there was cause to find that fraud was committed on the court, and the court temporarily vacated its transfer order pending a hearing to show cause on December 18, 2008.

On December 17, 2008, the GAL moved to vacate the transfer order under Minn. R. Juv. Prot. P. 46.02 on the ground that the transfer order was procured by fraud on the court. On that same day a tribal court order was filed concluding that: (1) the tribal court accepted jurisdiction over this matter on June 30, 2008; (2) this matter was transferred on December 2, 2008; and (3) the transfer of jurisdiction was complete. The tribal court order was filed in district court on December 18, 2008.

On December 18, 2008, at the close of the show-cause hearing, the district court permanently vacated the transfer order. The district court's basis for vacating the transfer order, as set forth in a written order filed December 22, 2008, was that:

> Either the Band representative negotiating the terms of the stipulation knew he or she had no authority to agree to its terms or the representative deliberately misled the Court. Whichever the case, this Court finds the misrepresentations were intentionally and wrongfully advanced to gain the Court's agreement to transfer jurisdiction.

The district court also determined that it retained jurisdiction to review the validity of the transfer order because the tribal court's June 30 order purporting to accept transfer of jurisdiction was of no legal effect, and the transfer order was vacated before the tribal court's December 17, 2008 order. The band appealed from the December 22, 2008 order vacating the transfer order.

## ISSUE

Did the district court have jurisdiction to vacate the transfer order?

## ANALYSIS

■ "The jurisdiction of courts is a question of law which this court reviews de novo." *Matsch v. Prairie Island Indian Comty.*, 567 N.W.2d 276, 278 (Minn.App. 1997), *review denied* (Minn. Sept. 18, 1997).

## ICWA

The band argues that the district court's vacation of the transfer order violates ICWA. We disagree.

■ ICWA was enacted because of concerns " 'over the consequences . . . of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " *In re Welfare of the Child of T.T.B.*, 724 N.W.2d 300, 304 (Minn.2006) (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S.Ct. 1597, 1600, 104 L.Ed.2d 29 (1989)). The aim of ICWA is the protection of the interests of Indian children and the promotion of the stability and security of Indian communities and tribes. *Id.* at 304–05 (citing 25 U.S.C. § 1902 (2000)).

■ ICWA defines a "child custody proceeding" as including foster care placement, termination of parental rights, pre-adoptive placement, and adoptive placement. 25 U.S.C. § 1903(1) (2006). ICWA and Minnesota law recognize concurrent but presumptively tribal jurisdiction of child custody proceedings involving an Indian child who neither resides nor is domiciled within that child's reservation. *T.T.B.*, 724 N.W.2d at 305. An Indian child's tribe may intervene at any point in

state court proceedings to seek transfer of the proceedings to that child's tribal court. 25 U.S.C. § 1911(b), (c) (2006). In situations when concurrent jurisdiction exists, transfer to tribal court is mandatory absent good cause to deny the transfer:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, *the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe*. . . .

*Id.* § 1911(b) (emphasis added). Although transfer is mandatory absent good cause, "such transfer shall be subject to declination by the tribal court of the tribe." *Id.*

Neither the text nor the purpose of ICWA precludes a state court from vacating, on the ground of misrepresentation, an order transferring a proceeding to tribal court. And ICWA does not permit procuring the transfer of a proceeding to the jurisdiction of a tribal court through intentional misrepresentations.

### The June 2008 Tribal Court Order

The band argues that the district court could not vacate the transfer order because the tribal court's June 2008 order accepting the transfer divested the district court of jurisdiction upon issuance of the transfer order in December 2008. We disagree.

The district court determined that the tribal court's June 2008 order did not constitute a valid acceptance of the December 2008 transfer of the proceeding. The district court specifically conditioned transfer of the proceeding upon acceptance, and the proceeding changed significantly from June to December. In June 2008, the proceeding concerned a CHIPS matter, but by December 2008, the primary focus of the proceeding was the termination of

parental rights. Moreover, the June 2008 order was followed by two district court orders denying transfer of the proceeding. But even if the June 2008 order constitutes a valid acceptance of the transfer of the proceeding, we conclude that the district court had jurisdiction to hear a motion to vacate the transfer order based on alleged intentional misrepresentations.

The district court's basis for vacating the transfer order was that:

> Either the Band representative negotiating the terms of the stipulation knew he or she had no authority to agree to its terms or the representative deliberately misled the Court. Whichever the case, this Court finds the misrepresentations were intentionally and wrongfully advanced to gain the Court's agreement to transfer jurisdiction.

The district court also stated that it "would not have agreed to transfer jurisdiction but for the assurances made by the Band" and that those assurances were "material and central" to its decision to transfer the proceeding to the jurisdiction of the tribal court.

▆▆▆ A court has the inherent power to set aside a final judgment if it determines "that such a judgment amounts to fraud upon the court." *Lindsey v. Lindsey,* 388 N.W.2d 713, 716 (Minn.1986). Fraud on the court exists when "a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair." *In re Welfare of C.R.B.,* 384 N.W.2d 576, 579 (Minn.App.1986), *review denied* (Minn. May 29, 1986) (quoting *Halloran v. Blue & White Liberty Cab Co.,* 253 Minn. 436, 442, 92 N.W.2d 794, 798 (1958)). Ad-

ditionally, upon a timely motion under the rules of juvenile protection procedure, a court may relieve a party from a final order and grant such relief as may be just for fraud, misrepresentation, or newly discovered evidence. Minn. R. Juv. Prot. P. 46.02. "Fraud sufficient to vacate a judgment . . . occurs when a party intentionally misleads or deceives the court as to material circumstances." *In re Conservatorship of Bromley,* 359 N.W.2d 723, 724 (Minn.App.1984)[1] (citing *Halloran,* 253 Minn. at 442, 92 N.W.2d at 798).

▆▆▆ We have found no authority excepting a transfer order from the laws and rules governing vacation of orders procured by misrepresentation. And as a matter of policy, there is no reason to create an exception for orders that transfer a proceeding to the jurisdiction of a tribal court. Because remedying fraud on the court is within the inherent power of a court and because the motion to vacate was proper under the rules of juvenile protection procedure, we conclude that on these facts, the district court had jurisdiction to vacate its order transferring the child-welfare proceeding to the jurisdiction of the tribal court.

Furthermore, we conclude that the district court did not abuse its discretion in vacating the transfer order. *See Galbreath v. Coleman,* 596 N.W.2d 689, 691 (Minn.App.1999) (stating a district court's decision to vacate an order or judgment is reviewed for an abuse of discretion). Here, the district court vacated the transfer order after finding that intentional and wrongful misrepresentations were advanced to gain the court's agreement to transfer the proceeding to the jurisdiction of the tribal court. Prior to advancement

---

1. *Bromley* concerned vacation under Minn. R. Civ. P. 60.02. 359 N.W.2d at 724. But because Minn. R. Civ. P. 60.02 is nearly identical with Minn. R. Juv. Prot. P. 46.02, we conclude that cases concerning vacation for fraud outside the juvenile protection context are relevant here.

of the misrepresentations, the district court had applied ICWA and twice found good cause to deny transfer of the proceeding to the jurisdiction of the tribal court. And the band did not appeal those orders. We conclude that evidence in the record supports the district court's findings regarding the misrepresentations, and we conclude that the district court did not abuse its discretion by vacating the transfer order.

**Tribal Sovereignty**

The band argues that the district court's vacation of the transfer order violates principles of tribal sovereignty. We disagree.

We recognize that tribal sovereignty is dependent on and subordinate only to the federal government and not the states. *State v. Roy,* 761 N.W.2d 883, 885 (Minn.App.2009) (citing *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987)). And we acknowledge that there is a public interest in promoting tribal sovereignty. *Greene v. Comm'r of Minn. Dep't of Human Servs.,* 755 N.W.2d 713, 723 (Minn.2008). But the district court's decision to vacate its order does not deny the band the authority to self-govern nor reflect on the competence of the tribal court. This is not a case where the district court vacated a transfer order based on the proceedings in tribal court; here, the tribal court had not yet commenced proceedings involving the placement of the children or the rights of the parents.

**Foreign Caselaw**

The band cites several foreign cases in support of its argument that the district court acted without its jurisdiction when it vacated the transfer order. But none of these cases involve the vacation of an order transferring a child-welfare proceeding to a tribal court when that order was procured through misrepresentation. *See*

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Comanche Indian Tribe of Okla. v. Hovis,* 53 F.3d 298 (10th Cir.1995); *Robbins v. Pocket Beverage Co., Inc.,* 779 F.2d 351 (7th Cir. 1985); *Jackson County ex rel. Smoker v. Smoker,* 341 N.C. 182, 459 S.E.2d 789 (1995); *In re M.M.,* 154 Cal.App.4th 897, 65 Cal.Rptr.3d 273 (Cal.Ct.App.2007), *review denied* (Cal. Nov. 28, 2007). Accordingly, because all of the foreign cases cited by the band are distinguishable on the facts and issues raised, we conclude that these cases are inapposite.

**Best Interests of the Children**

The paramount concern in any child-welfare proceeding is the best interests of the child. Minn.Stat. § 260C.301, subd. 7 (2008). And Minnesota law requires that the best interests of Indian children be determined consistent with ICWA. *Id.* Here, we conclude that allowing a district court to vacate its transfer order is in the best interests of the children, and is consistent with ICWA.

**DECISION**

After the district court twice denied the band's request for transfer of a child-welfare proceeding to tribal court, the district court ordered transfer of the proceeding upon the band's agreement to certain conditions. Before the tribal court commenced proceedings, the district court vacated the transfer order because of misrepresentations made to gain the court's agreement to transfer the proceeding. On these facts we conclude that the district court had jurisdiction to vacate a transfer order procured by intentional misrepresentations.

**Affirmed.**