*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0539**

In the Matter of the Estate of: Mitzi M. Olson,
a/k/a Mitzi Marie Olson,
Decedent.

**Filed December 7, 2015
Affirmed in part and reversed in part
Stauber, Judge**

Washington County District Court
File No. 82-PR-12-3406

Robert D. Maher, Sarah E. Crippen, William R. Asp, Best & Flanagan, L.L.P., Minneapolis, Minnesota (for appellant/cross respondent Hillsdale College)

Kay Nord Hunt, Phillip A. Cole, Lommen Abdo, P.A., Minneapolis, Minnesota (for respondents/cross-appellants Michael G. Kula, et al.)

Daniel W. Boerigter, Yost & Baill, L.L.P., Minneapolis, Minnesota (for respondents Jamie Olson Craggs, et al.)

Rodney J. Mason, Regina D. Sabbia, Kimberly A. Mason, Rodney J. Mason, Ltd., St. Paul, Minnesota (for respondent First Lawyers Trust Company)

Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Willis, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**STAUBER**, Judge

Appellant challenges the district court's order affirming the personal representatives' apportionment of estate taxes under decedent's will. By notice of related appeal, respondent personal representatives assert that the district court erred when it concluded that appellant's petition for declaratory relief was timely. We reverse the district court's order as to the timeliness of the petition, but affirm the district court's construction of the will's tax-apportionment provisions.

**FACTS**

Mitzi M. Olson (decedent) died in May 2012, leaving an estate valued at more than $18 million. In her 2010 will, decedent appointed her long-time attorney, Michael Kula, and Diane M. Zais, who had been her personal assistant since 1986, to be co-personal representatives.

The parties here include appellant and cross-respondent Hillsdale College (Hillsdale) of Michigan, a direct beneficiary under the will and the remainder beneficiary of two charitable remainder unitrusts (CRUTs) [1] set up for decedent's son, Todd Olson, and her daughter, Wendy Olson; respondents and cross-appellants Kula and Zais in their capacity as personal representatives of the estate (personal representatives); respondents

---

[1] "A charitable remainder trust creates a life estate . . . and conveys the remainder interest to a qualified charitable organization." *In re Wells*, 448 B.R. 909, 913 (Bankr. W.D. Tex 2011). The estate can take a tax deduction on the fair market value of the remainder. *Id.*; *see* 26 U.S.C.A. § 2055 (2012).

2

Jamie Craggs (Craggs), decedent's daughter, and her children; and respondent First Lawyers Trust Company as trustee for Wendy Olson's son.

Decedent made a number of special bequests, including (1) $2 million to Craggs; (2) $1 million to Hillsdale; (3) $2 million to a CRUT for Todd Olson; and (4) $1.5 million to a CRUT for Wendy M. Olson, as well as other special bequests to relatives, employees, and charitable organizations. Hillsdale is the charitable remainder beneficiary of both CRUTs.

Several provisions of the will deal with the issue of estate taxes. In Article I, the personal representatives must

> pay from the residue of my estate the expenses of my last illness and funeral, valid debts, expenses of administering my estate, including non-probate assets, and any estate or other death taxes, except to the extent paid from other sources, provided that to the extent the residue of my estate is not sufficient to pay said estate taxes, the portion of said estate taxes for which the residue of my estate is insufficient shall be paid by my Personal Representatives and allocated and apportioned in accordance with the provisions of Article XV hereof.

Article III makes various special bequests "[s]ubject to the apportionment of estate taxes as set forth in Articles I and XV." In Article V, decedent acknowledges that she made adequate provision for her children through special bequests, but adds, "Nevertheless, I give, devise and bequest the rest, residue and remainder of my estate (*if there remains a residue after payment of those items set forth in Article I, including estate taxes*)" in one-third shares to the two CRUTs and Craggs. (Emphasis added.) In Article VI, 6.1.5, and

3

Article VII, 7.1.5., decedent directs that no federal or state estate taxes "shall be allocated to or recoverable from the trust[s]."

Article XIII sets forth decedent's acknowledgement regarding estate taxes:

> I have been advised, and I acknowledge, that substantial federal and/or state estate taxes will be occasioned as a result of my death due to the size and extent of my estate and the distribution plan that I have made herein. Nevertheless, this Last Will and Testament is the product of my careful and thoughtful consideration and it completely and accurately reflects my personal wishes regarding the distribution of my estate.

Article XIV states that "[t]o the extent the residue of my estate is insufficient to pay all of the expenses set forth in Article I hereof, including estate taxes occasioned by my death, said estate taxes shall be apportioned and paid as [set forth in Article XV]."

Article XV provides:

> (1) No such taxes shall be apportioned against or paid from any property or interest in property passing under this instrument or otherwise that qualifies for the charitable deduction, including [the CRUTs];
>
> (2) All such taxes that are not apportioned pursuant to the preceding provisions of this Section shall be apportioned against and paid from the interests in property generating such taxes in the proportion that the value of each such interest in property bears to the total value of all such interests generating such taxes. The values used in determining such taxes shall be used for that purpose. In making such apportionment, allowances shall be made for any exemptions granted, any classification made of persons interested in my estate and for any deductions and credits allowed by the law imposing such taxes. Any exemption or deduction allowed by reason of the relationship of any person to me, by reason of the purposes of a transfer made by reason of my death, or by allocation to the transfer (either by election by the Personal Representative or the Trustee or by operation of

4

law), shall inure to the benefit of the person bearing such relationship or receiving the transfer.

(3)    The provisions of this instrument relating to the apportionment and payment of estate taxes shall supersede all contrary provisions of any other instrument in effect as of the date of my death (other than any such instrument that specifically refers to this instrument and specifically directs that such taxes be apportioned and paid in a manner contrary to the provisions of this instrument).

My Personal Representatives shall require any transferee or other person to reimburse my estate for any payments made pursuant to this Article; however, my Personal Representatives are authorized to withhold from the assets otherwise distributable to a beneficiary under this instrument an amount sufficient to pay any estate taxes apportioned against such assets.

In November 2012, the personal representatives filed the first interim account and petition for partial distribution. Included in the petition was a reserve for state and federal estate taxes in the amount of $5.75 million. The proposed partial distribution comprised all of the special bequests, including those to the two CRUTs[2], and the outright bequests to Craggs and to Hillsdale College. The petition stated that there were sufficient funds in the estate after these distributions to pay all of the outstanding costs, expenses, and estate taxes. No allocation for estate taxes was made against any of the special bequests.

---

[2] The will directed the personal representatives to make certain deductions from the bequests to the CRUTs equal to the amounts decedent had advanced prior to her death to Todd Olson and Wendy Olson. Therefore, Todd's CRUT was funded with $1,998,500 rather than $2 million and Wendy's CRUT was funded with $1.152 million instead of $1.5 million.

5

The district court held a hearing on December 18, 2012; all interested parties received notice of this hearing. The district court filed an order for partial distribution on December 28, 2012, permitting the personal representatives to pay the special bequests, and finding that "[t]here are sufficient funds in this estate available . . . to pay, settle or dispose of expenses of administration, taxes, claims and all other obligations of the Estate after distribution of the property described above."

In May 2013, the personal representatives filed an amended petition to reflect the amount to be paid to Wendy Olson's CRUT after certain deductions; the district court held a hearing in June and issued an amended order for partial distribution. Shortly after this hearing, Hillsdale's attorney informed the personal representatives by letter that the estate taxes should not be paid out of the estate residue, but should be allocated to the special bequests. Because of the favorable tax status of the CRUTs, this would result in more money being placed in the CRUTs with a potentially larger remainder for Hillsdale. The other effect of this would be that all of Cragg's outright bequest and her residuary share would be forfeited, and she would receive nothing under the will. The special bequests to individuals would be reduced by about 51%.

The personal representatives disagreed by return letter. In August 2013, they filed and paid the federal and state estate taxes. On March 17, 2014, Hillsdale filed a petition for declaratory relief, asking the court to interpret the taxation provisions of the will. The personal representatives challenged the district court's jurisdiction and Hillsdale's standing, and argued that the will unambiguously directed them to pay estate taxes out of the estate residue.

6

After hearings in June and October 2014, the district court issued its order on January 20, 2015. The district court granted Hillsdale's request for a declaratory judgment that the will's no-contest clause was not triggered by its request for construction of the will and denied the personal representatives' motion to dismiss for lack of jurisdiction and standing. But the court also denied Hillsdale's request "to find that the personal representatives misinterpreted the estate tax apportionment provisions of the Will." The district court concluded that the unambiguous language of the will directed the personal representatives to pay the estate taxes out of the estate residue before it was divided among the two CRUTs and Craggs.

Hillsdale filed a notice of appeal on the issue of estate-tax apportionment; the personal representatives filed a notice of related appeal challenging jurisdiction and standing.

## D E C I S I O N

### I.

For their related appeal, personal representatives argue that the district court erred by concluding that Hillsdale's petition was not time-barred. The personal representatives argue that the petition was filed after a six-month limitations period set forth in Minn. Stat. §§ 525.71; .712 (2014). The district court concluded that the petition was timely because it "does not necessarily require an amendment of the Interim Order for Partial Distribution."

An appellate court reviews de novo the application of a statute of limitations. *Sipe v. STS Mfg., Inc.* 834 N.W.2d 683, 686 (Minn. 2013). "Statutes of limitations are both

7

procedural and substantive because they regulate when a party may file a lawsuit and when a lawsuit is barred." *Mercer v. Anderson*, 715 N.W.2d 114, 119 (Minn. App. 2006). "The effect of a statute of limitations is an issue separate from subject matter jurisdiction and personal jurisdiction. But some interplay exists between the two doctrines." *Id.* (quotation and citations omitted). "The purpose of a statute of limitations is to prescribe a period within which a right may be enforced and after which a remedy is unavailable for reasons of private justice and public policy." *Miernicki v. Duluth Curling Club*, 699 N.W.2d 787, 788 (Minn. App. 2005) (quotation omitted), *review denied* (Minn. Sept. 20, 2005).

Minn. Stat. § 525.71 sets forth which probate orders may be appealed to this court. An order directing or refusing to direct the payment of a bequest or distributive share, if the amount in controversy is more than $100, is appealable, as is "an order, judgment, or decree relating to or affecting estate taxes." Minn.Stat. § 525.71(a)(8), (16). An appeal must be taken within six months after the filing of the order, if no written notice is served. Minn. Stat. § 525.712. The personal representatives argue that the district court filed orders for partial distribution on December 28, 2012, and July 16, 2013, and, therefore, Hillsdale's March 17, 2014 petition was untimely. Hillsdale argues that the partial-distribution orders did not reveal the personal representatives' proposed tax-apportionment method and thus Hillsdale's best remedy was to petition the district court for amendment of the prior orders.

Although the petitions for partial distribution do not specifically apportion taxes against a particular part of the estate, they include (1) a reserve for estate taxes; (2) a

8

statement that the residuary estate was sufficient to permit payment of the taxes without allocation from the beneficiaries; and (3) no apportionment of estate taxes against any of the special bequests.  A representative of Hillsdale attended at least some of the hearings at which the partial distribution was discussed.

Further, Minn. Stat. § 525.71(a)(8) states that an order directing or refusing payment of a bequest or distributive share is appealable.  Hillsdale is disingenuous when it describes its petition as a mere request for interpretation; the petition is entitled

> Hillsdale College's petition for declaratory relief and for instruction from the court and to construe and/or enforce will's terms and personal representatives' duties regarding estate tax apportionment, *calculation and distribution of probate shares*, treatment of QPRT property, attorney fees invoices, an accounting and *to amend the court's interim orders for partial distribution dated December 21, 2012 and July 16, 2013*."  (Emphasis added.)

This request encompasses more than mere interpretation.

Hillsdale argues that its petition was timely under Minn. Stat. § 524.1-304 (2014).  This statute permits the court to modify orders outside of the time limitations of section 525.712 in order to correct clerical or judicial errors, in the case of fraud or misrepresentation, or for excusable neglect, inadvertence, or mistake, if such claims are made with due diligence.  Minn. Stat. § 524.1-304(b).  We review the district court's order denying a request to vacate for mistake or fraud for an abuse of discretion.  *In re Estate of Weber*, 418 N.W.2d 497, 502 (Minn. App. 1988) (citing the predecessor statute to Minn. Stat. § 524.1-304), *review denied* (Minn. Apr. 4, 1988).  Hillsdale raises mistake and fraud.

9

A party asserting mistake must demonstrate (1) a reasonable claim on the merits; (2) a reasonable excuse for failure to act; (3) due diligence; and (4) no substantial prejudice to another party. *Lund v. Pan Am. Mach. Sales*, 405 N.W.2d 550, 552 (Minn. App. 1987). Hillsdale claims a mistake because the interim orders do not reveal the apportionment method. The petition for an interim distribution does not specify how estate taxes would be paid. But it sets forth the specific bequests; discloses an estimated amount for estate taxes; requests permission to distribute the specific bequests without making an allocation of taxes; and avers that there are enough estate assets to pay taxes "after distribution of the property described above." Hillsdale closely followed the probate action and was represented at the hearings by an attorney, making it unlikely that Hillsdale was mistaken about the personal representatives' proposed apportionment.

The standard for fraud is similar to that in Minn. R. Civ. P. 60.02. *See In re Sivert's Estate*, 271 Minn. 152, 163, 135 N.W.2d 205, 212 (1965); *Barrett v. Macdonald*, 264 Minn. 560, 565, 121 N.W.2d 165, 169-70 (1963). "Fraud on the court exists when a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair." *In re Welfare of Children of R.A.J.*, 769 N.W.2d 297, 303 (Minn. App. 2009) (quotation omitted). "Fraud sufficient to vacate a judgment occurs when a party intentionally misleads or deceives the court as to material circumstances." *Id.* (quotation omitted). While not describing in detail how they intended to apportion the estate taxes, the personal representatives did not mislead the district court as to material circumstances to such a degree that its judgment was changed.

10

The district court did not address fraud or mistake in its order; rather, it determined that Hillsdale was not challenging its order for partial distribution, but was asking for clarification on the payment of taxes. But Hillsdale's petition is effectively a challenge to the partial distribution approved by the district court. We conclude that Hillsdale's petition was time-barred, and the district court did not have the authority to hear Hillsdale's petition.[3]

## II.

Because of our decision, we need not address Hillsdale's claim that the district court erred in its interpretation of the will, but we nevertheless do so in the interests of judicial economy. Hillsdale argues that the district court erred in its interpretation of the will's tax-apportionment provisions. The district court concluded that

> [i]t is clear from the terms of the Will that the [personal representatives] are to distribute the specific bequests, pay the estate taxes from the remaining assets, if possible, then, if any assets remain, divide those assets among the three children. This does not violate the restrictions placed on the payment of taxes from the CRUTs set forth in Articles VI and VII. The [personal representatives] have followed the provisions of the Will with respect to the payment of estate taxes.

Hillsdale, the personal representatives, and the district court all agree that the will's language is unambiguous, but Hillsdale reaches a different conclusion as to interpretation of the will.

---

[3] The personal representatives also assert that Hillsdale lacks standing. The definition of "interested party" in Minn. Stat. § 524.1-201(32) (2014) is sufficiently broad to encompass Hillsdale. *See In re Estate of Pawlik*, 845 N.W.2d 249, 251 (Minn. App. 2014), *review denied* (Minn. June 25, 2014).

An appellate court reviews the district court's interpretation of an unambiguous will or trust agreement de novo. *In re Estate and Trust of Anderson*, 654 N.W.2d 682, 687 (Minn. App. 2002), *review denied* (Minn. Feb. 26, 2003). If a will is unambiguous, the testator's intent must be discerned from the document, and a court may not consider extrinsic evidence. *Id.* A court's interpretation of a will or trust should consider the document as a whole, not "isolated words." *In re Stisser Grantor Trust*, 818 N.W.2d 495, 502 (Minn. 2012) (quotation omitted).

Hillsdale argues that the specific language of paragraphs 6.1.5 and 7.1.5, which state that estate taxes "shall not be allocated to or recoverable from the [CRUTs]," together with other will language about estate taxes and allocation contained in Articles I, V, and XV, precludes payment of taxes from the residue left after payment of specific bequests. Hillsdale contends that decedent intended that two-thirds of the residue was to be distributed to the CRUTs, and, therefore, the estate taxes should be apportioned to the noncharitable specific bequests.

Hillsdale offers a strained interpretation of the will that does not take the entire document into consideration. In Article I, decedent directs the personal representatives to pay estate taxes from the residue of her estate. "Residue" or "residuary estate" is defined as "[t]he part of a decedent's estate remaining after payment of all debts, expenses, statutory claims, taxes, and testamentary gifts (special, general, and demonstrative) have been made." *Black's Law Dictionary* 629 (9th ed. 2009). In this article, decedent states that, if the residue is insufficient to pay the estate taxes, then the personal representatives shall pay the taxes in accordance with the provisions of Article XV. Article III includes

12

the special bequests "[s]ubject to the apportionment of estate taxes as set forth in Articles I and XV." Referring to Article I, apportionment occurs if the residue of the estate is insufficient to pay the taxes. Article V notes that decedent provided for her children by special bequests, but in addition to the special bequests, the residue is to be divided in thirds, with one third going outright to Craggs and the other thirds going to the two CRUTs. But this article also states that the residue is to be disposed of in this manner only "if there remains a residue after payment of those items set forth in Article I, including estate taxes." Thus, until all the debts, expenses, and estate taxes are paid, the residue is not available for division; the residue will be divided among Craggs and the CRUTs only after payment of the items set forth in Article I, including estate taxes.

This is similar to a condition precedent in contract. "A condition precedent . . . is one which is to be performed before the agreement of the parties becomes operative." *Nat'l Union Fire Ins. v. Schwing America, Inc.*, 446 N.W.2d 410, 412 (Minn. App. 1989) (quotation omitted). "When a contract contains a condition precedent, a party to the contract does not acquire any rights under the contract unless the condition occurs." *Id.* Similarly here, the personal representatives are required to pay debts, expenses, and estate taxes before the residue of the estate can be divided among Craggs and the two CRUTs. Decedent acknowledges in Article XIII that she could have avoided some taxes by using a different distribution plan; as Hillsdale argues, putting more money into the CRUTs would reduce the estate taxes payable because of the charitable deduction. But decedent rejected this option.

13

Decedent reiterates in Article XIV that estates taxes are to be paid from the residue. Article XIV states: "To the extent the residue of my estate is insufficient to pay all of the expenses set forth in Article I hereof, including estate taxes occasioned by my death, said estate taxes shall be apportioned and paid [in accordance with Article XV]."

Article XV discusses methods of apportioning estate taxes and prohibits allocating taxes against the CRUTs and any other charitable bequests. This is the basis for Hillsdale's claim that the taxes cannot be paid from that portion of the estate left after the special bequests because the residue will ultimately be placed in the CRUTs. But the portion of the estate left after special bequests is not to be placed in the CRUTs until after debts, expenses, *and taxes* are paid; payment is made to the CRUTs (and Craggs) only if a residue remains after payments of these items.

Taken together, the language of the will is unambiguous and the provisions regarding estate taxes are reconcilable: decedent intended that estate taxes would be paid from the portion of the estate left after payment of special bequests; the residue after payment of taxes and expenses would be divided among the CRUTs and Craggs. The additional bequests to the CRUTs are merely conditional until a residue remains after payment of all debts, expenses, and estate taxes. Because the will is unambiguous, we need not consider extrinsic evidence.

Finally, Hillsdale's reliance on Minn. Stat. § 524.3-916 (2014) is misplaced. This section governs apportionment of estate and generation-skipping taxes and directs apportionment of taxes among all persons interested in the estate "in proportion [to] the value of the interest of each person . . . bears to the total value." Minn. Stat. § 524.3-916

14

(b)(1). But this apportionment is made only if the will or other governing instrument does not provide for a method of allocating estate taxes. *Id.* at (b). Decedent included a method for apportionment of taxes in the will. The district court did not err in its interpretation of decedent's will.

**Affirmed in part and reversed in part.**